In re Philip WAGNER and Doris Wagner, Debtors.

Philip WAGNER and Doris Wagner, Appellants,

v.

Phillip ARMSTRONG, Appellee.

In re Robert L. MARTIN and Margie Martin, Debtors.

Robert L. MARTIN and Margie Martin, Appellants,

v.

Phillip ARMSTRONG, Appellee.

In re John A. HOFF and Irene M. Hoff, Debtors.

John A. HOFF and Irene M. Hoff, Appellants,

v.

Phillip ARMSTRONG, Appellee.

In re Darrell Leroy LUTES and Marlene Jo Lutes, Debtors.

Darrell Leroy LUTES and Marlene Jo Lutes, Appellants,

v.

Phillip ARMSTRONG, Appellee.

Civ. Nos. A1–93–037, A1–93–062 to A1–93–064.
Bankruptcy Nos. 88–05975, 91–36030, 91–35335 and 92–30013.

United States District Court, D. North Dakota, Southwestern Division.

Aug. 30, 1993.

Sheldon A. Smith, Lucas & Smith, Bismarck, ND, for appellants.

Phillip Dale Armstrong, Minot, ND, Kathryn Ann Page, Office of the U.S. Trustee, Minneapolis, MN, for appellee.

### MEMORANDUM AND ORDER

CONMY, District Judge.

The issue in these four consolidated appeals is whether a family farmer/debtor may make direct payments to "impaired"[1] secured creditors and thereby avoid payment of fees to the Chapter 12 Trustee in a confirmed Chapter 12 bankruptcy reorganization plans.

### BACKGROUND

Debtors, Doris and Phillip Wagner (Wagner) farm in Western North Dakota. On November 12, 1988 the Wagners petitioned

for Chapter 12 re-organization and protection.[2]

At the time of the filing, Wagner had about $550,000 of debt secured by real and personal property. The four major secured creditors were Farm Credit Services, bank of St. Paul; Liberty National Bank of Dickinson; John Deere Co.; and First National Bank of Belfield. Wagner reached an agreement with the secured creditors regarding the terms of a chapter 12 plan. In the case of three of the creditors, this agreement was reduced to writing.

The bankruptcy court confirmed the second modified Wagner chapter 12 re-organization plan on May 22, 1989. The major secured creditors and the bankruptcy trustee agreed to the plan. The first payment to an impaired creditor under the plan was to be made on November 1, 1989.

Wagner successfully completed all payments to plan creditors. These payments were made directly by the Wagners. No fees were collected by the trustee on these payments. On December 1, 1992, the trustee filed a motion to dismiss the bankruptcy petition for failure to pay trustee fees on these payments made directly to the creditors by the Wagners. The bankruptcy court granted the motion to dismiss on February 11, 1993, 150 B.R. 753. This appeal was filed on February 22, 1993.

Robert and Margie Martin (Martin) are also western North Dakota farmers. They petitioned for chapter 12 bankruptcy on October 24, 1991.

At the time of the petition, Martin had about $400,000 in secured debt. The four secured creditors were Farmers Home Administration; First National Bank of Hettinger; Commercial Bank of Mott; and

---

1. Family farmers commonly have obligations which are secured by liens against properties worth less than the amounts of the obligations. Chapter 12 gives debtors, who must be family farmers, the power to write down a secured claim to the current value of the asset securing the debt. The remainder of the debt then becomes unsecured. A secured creditor who has had his lien written down in a chapter 12 reorganization plan is hence referred to as being "impaired".

2. Chapter 12 of Title 11 is also known as the Family Farmer Bankruptcy Act of 1986. Chapter 12 was enacted as an extraordinary response to a temporary situation in which family farmers were faced with economic elimination brought about by the combination of rising production costs, falling land values, and falling consumer prices. *In re Overholt*, 125 B.R. 202, 207 (S.D.Ohio 1990).

Butler Machinery. Martin reached written and oral agreements with these secured creditors as to a reorganization plan. The terms were incorporated into a chapter 12 plan. Payments to impaired secured creditors under the plan were to begin in December 1992.

Bankruptcy court confirmed the Martin first modified chapter 12 plan on June 16, 1992. All the secured creditors and the trustee agreed with the terms of the plan.[3] The Minneapolis regional office of the U.S. Trustee filed a motion to dismiss the Martin chapter 12 petition on March 11, 1993. Bankruptcy court granted the motion on April 20, 1993. This appeal was taken on April 22, 1993.

John A. and Irene M. Hoff (Hoff) filed for chapter 12 protection on April 1, 1991. They owed about $424,000 to the Bank of North Dakota, First American Bank, West, and Metropolitan Federal. Hoff reached an agreement with the secured creditors as to the terms of a reorganization plan. The agreements were incorporated into a chapter 12 plan and the plan was confirmed by the bankruptcy court on February 3, 1992.[4] Payments to impaired secured creditors were to begin in November 1991 under the plan. The Minneapolis regional office of the U.S. Trustee filed a motion to dismiss the Hoff chapter 12 petition on March 8, 1993. The bankruptcy court granted the motion for dismissal on April 20, 1993 and Hoff brought this appeal on April 22, 1993.

Darrell Leroy and Marlene Jo Lutes (Lutes) filed their chapter 12 petition on January 6, 1992. Lutes owed $196,000 to Farm Credit Services, bank of St. Paul, John Deere, and Dakota Western Bank.[5] The bankruptcy court confirmed the first modified chapter 12 plan on July 13, 1992. The plan called for the first payment to an impaired secured creditor in November 1992. The Minneapolis regional office of

the U.S. Trustee brought a motion to dismiss the petition on March 10, 1993 which was granted on April 20, 1993. This appeal was taken on April 22, 1993.

All four of the chapter 12 plans contain the following provisions:

Debtors hereby submit all present and future earnings (for the three years of this plan) to the supervision and control of the Trustee and agree to pay the Trustee the fee owing under a formula of the weighted average fee attributable to the extent payments exceed $450,000 at 3% and payments under $450,000 at 9% of all secured payments to creditors ... at the same time the payments are made to the secured creditor. To the extent the trustee is not involved and a direct payment is made, no fee will be paid.

The debtors shall make disbursements in accordance with the terms of the plan, except for those required to be made by the trustee.

This court ordered the consolidation of these four appeals on June 23, 1993.

## DISCUSSION

When reviewing a bankruptcy court decision, the standard of review is clearly erroneous for findings of fact and de novo for conclusions of law. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

■ There are two conflicting lines of cases on the question of whether a farmer/debtor may make direct payments to impaired creditors in chapter 12 bankruptcy and thereby avoid paying trustee fees. One line of cases says you can. The other line says you can't.[6] *In re Erickson Partnership*, 77 B.R. 738 (Bkrtcy.D.S.D.1987) and *In re Overholt*, 125 B.R. 202 (S.D.Ohio 1990) (family farmer/debtor may pay chapter 12 impaired creditors directly and avoid trustee fees); *but see Matter of Finkbine*,

---

**3.** Counsel for Farmers Home Administration and First National Bank of Hettinger were present for the confirmation hearing.

**4.** Counsel for First American Bank, West was present at the confirmation hearing.

**5.** Lutes also had three secured creditors for small automobile related debts which were affirmed in the chapter 12 plan.

**6.** All the cases seem to say a debtor may directly pay unimpaired secured creditors and avoid paying trustee fees as to these amounts.

94 B.R. 461 (Bkrtcy.S.D.Ohio 1988), *In re Logemann*, 88 B.R. 938 (Bkrtcy.S.D.Iowa 1988), and *In re Rott*, 73 B.R. 366 (Bkrtcy. D.N.D.1987) (impermissible for debtor to pay impaired creditors directly and avoid trustee fee payment).

The Eighth Circuit Court of Appeals has not reached this question. Only the Ninth Circuit has ruled on this question, affirming a bankruptcy court decision that payments to impaired creditors must be made by the trustee. *In re Fulkrod*, 973 F.2d 801 (9th Cir.1992).

Chapter 12 of the bankruptcy code does not expressly permit or prohibit a debtor's direct payment to impaired creditors. The legislative history does not show that this issue was discussed or even contemplated. The decisions in the two conflicting line of cases were dredged from the vapors of the legislative history and the individual manner in which each court has construed the provisions of the act.

The line of cases saying a farmer/debtor may make direct payments to impaired creditors begin by construing various sections of the bankruptcy code. § 1226(c) says:

> *except as otherwise provided in the plan or in the order confirming the plan,* the trustee shall make payments to creditors under the plan. (emphasis added) 11 USC § 1226(c).

Section 1225(a)(5) is also cited and says:

Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

. . . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be *distributed by the trustee or the debtor under the plan* on account of such claim is not less than the allowed amount of such claim. (emphasis added) 11 USC § 1225(a)(5)2.

These sections, it is argued, permits payments of secured claims by either the trust-

ee or the farmer/debtor. Especially when the code contains no other affirmative limitation on the types of claims which can be paid by a farmer/debtor. *See In re Erickson Partnership* and *In re Overholt.*

In one way or another, the cases which hold a farmer/debtor can not avoid payment of trustee fees by direct payment to impaired creditors say any interpretation of a statute should avoid rendering a section superfluous or meaningless and a court should look not merely to a particular clause in which specific words are used, but should look at the entire statute, and the objects and policy of the law. *In re Fulkrod*, 973 F.2d 801, 802, 803 (9th Cir.1992).

The primary argument is that policy grounds mandate the view that all payments to impaired creditors must be subject to trustee fees.

The syllogism seems to be that all chapter 12 reorganization plans require a trustee. Congress could have provided a separate appropriation for chapter 12 trustees, but instead Congress required that a percentage of the assets of a bankruptcy estate in the form of a percentage of payments received by the trustee under the plan be used to fund the chapter 12 trustee. 28 USC 586(e). If a farmer/debtor can make direct payments to impaired creditors, the trustees will receive nothing. There can be no chapter 12 reorganization tool available to family farmers with out fees for trustees. This is not an outcome Congress could have intended. Therefore, all payments made to secured creditors are subject to trustee fees.

This reasoning includes the reminder that Congress borrowed heavily from the reorganization provisions of chapter 13 in adopting chapter 12 and chapter 13 debtor may not pay an impaired creditor directly in order to avoid trustee fees. *See Matter of Finkbine* at 464–465 (although debtor may serve as disbursing agent).

The terms in 11 U.S.C. § 1226(c) and 11 U.S.C. § 1225(a)(5) which the *Overholt* court says implies a right of direct payment is only evidence that the payments to creditors will most often go beyond the life of a

chapter 12 plan and thereafter will be made by the farmer/debtor.

Neither line of cases is completely satisfactory although the *Fulkrod* decision seems preferable. Unfortunately, all these cases involve the question of whether a proposed plan should be confirmed. In the four instant cases the plans have already been confirmed. The trustee and the secured creditors agreed to the language in the plan regarding trustee compensation.[7]

In these four consolidated cases, there is no explicit delineation as to what, if any, creditor payments were going to be made directly by the farmer/debtor. The plans says:

> Debtors hereby submit all present and future earnings (for the three years of this plan) to the supervision and control of the Trustee and agree to pay the Trustee the fee owing under a formula of the weighted average fee attributable to the extent payments exceed $450,000 at 3% and payments under $450,000 at 9% of all secured payments to creditors ... at the same time the payments are made to the secured creditor. To the extent the trustee is not involved and a direct payment is made, no fee will be paid.
>
> The debtors shall make disbursements in accordance with the terms of the plan, except for those required to be made by the trustee..

This language is convoluted, mixed, and unclear but, was approved by numerous attorneys and the bankruptcy court. Despite the fact that the trustee compensation provisions go in opposite directions, a bankrupt farmer seeking economic survival would read this to mean he or she could continue to make direct payments to his or her creditors and avoid paying large sums of money to the trustee.

If these were appeals of a bankruptcy court refusal to confirm a chapter 12 plan because it called for direct payments to be made by debtors to impaired secured creditors, the court may respond differently. But here the regional trustee office attempts to put milk back in the bottle and retroactively compensate the trustee under their postage stamp fee structure. This court is not inclined to require trustee fees to be paid when plans with the above language are already confirmed.

Accordingly, the Order of the Bankruptcy Court with respect to each file is **REVERSED** and the matters are remanded to the Bankruptcy Court for further action consistent with this Order.

SO ORDERED.

---

7. There is nothing in the record indicating that any of the creditors support the dismissal motions.