### In re C.A. JACKSON RANCH COMPANY, EID 73–102533, Debtor.

**Bankruptcy No. 92–70583.**

United States Bankruptcy Court, E.D. Oklahoma.

April 18, 1995.

James A. Conrady, Okmulgee, OK, for debtor.

Robert Inglish, Okmulgee, OK, for trustee.

John Shipp, Idabel, OK, for Idabel Nat. Bank.

### ORDER

TOM R. CORNISH, Bankruptcy Judge.

On this 17th day of April, 1995, the Motion for Order Directing Payment of Trustee's Fees from Escrow Account filed by the Trustee, Robert D. Hemphill, and the Response to Motion for Payment of Trustee's Fees filed by the creditor, Idabel National Bank ("the Bank"), came before this Court for consideration. The Court ordered the Office of the United States Trustee to comment, which it did on April 10, 1995.

After a review of the above-referenced pleadings, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

### FINDINGS OF FACT

1. This bankruptcy case was filed on May 6, 1992.

2. The Debtor is a partnership whose assets consist of cattle and equipment.

3. The First Amended Chapter 12 Plan was confirmed on September 11, 1992. The Debtor provided in the Plan to pay the Bank $272,493.94 with interest. This amount was determined pursuant to 11 U.S.C. § 506 to be the value of the collateral. The Debtor, in August, 1994, began liquidating its herd. It should be noted that the Chapter 12 Plan did not provide for liquidation of the cattle.

4. The Bank filed a Motion to Dismiss because the Debtor had liquidated the cattle which allegedly constituted a material default under the Plan. The Bank further requested that the proceeds of all sales of the collateral in which Idabel National Bank had a security interest be paid to it; the Chapter 12 Trustee be required to file a final report and a final account of the administration of the bankruptcy estate; and that the Bank be awarded any other relief to which it was entitled.

5. On November 29, 1994, the Debtor filed its objection to the Amended Motion to Dismiss stating that the Debtor had completed all of its payments required under the supervision of the Chapter 12 Trustee. The Trustee agreed with the Debtor's position. Additionally, the Debtor responded that it had no objection to turning over the balance of the Debtor–in–Possession's bank account. The matter was set for hearing on December 20, 1994, after which the parties settled the matter wherein an escrow account was established, and ninety percent (90%) of the proceeds were to be paid to Idabel National Bank. The remaining ten percent (10%) of the proceeds were to be held in the escrow account until written authorization for its release was executed by all of the parties or until an Order of this Court was entered regarding the same. As a result, the Trustee filed this Motion for Payment of Trustee's Fees requesting that the Court award him the remaining ten percent (10%) in the escrow account.

The Bank objected to the Motion for Payment of Trustee Fees arguing that the Plan required the Trustee to oversee the Debtor's affairs until three payments had been made to Idabel National Bank. The Bank argues that because the Trustee did not participate in the liquidation of the cattle, he should not be entitled to fees. The Bank relies on 11 U.S.C. § 330. The Trustee acknowledged that he did not know that the Debtor liquidated the cattle until after the fact. However, the Trustee argues that he is still entitled to the remaining ten percent (10%).

### CONCLUSIONS OF LAW

■ A. The pivotal issue in this case is whether the Debtor may make direct payments to an impaired creditor and avoid payment of the Trustee's fee. There is a split of authority among the courts that have considered similar questions. *Foulston v. BDT Farms (In re BDT Farms),* 21 F.3d 1019, 1023 fn. 6 (10th Cir.1994). *See, also, In re Wagner,* 159 B.R. 268, 270 (D.N.D.1993); *In re Fulkrod,* 126 B.R. 584, 585 (9th Cir. BAP 1991); *In re Overholt,* 125 B.R. 202, 209 (S.D.Ohio 1990). Section 586(e)(1)(B)(ii)(I) provides:

> (e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
>
> (B) a percentage fee not to exceed—
>
> (ii) in the case of a debtor who is a family farmer, the sum of—
>
> (I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,000; ...

Section 586(e)(2) provides, in pertinent part:

> Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

In *In re Fulkrod,* the Court explained:

> It is plain that Congress intended for the Chapter 12 trustee to play a vital role in the administration of these [Chapter 12] cases. Congress also intended for those who reap the benefits of Chapter 12 to pay a substantial portion of the cost of administering the trustee's office. Which payments must be earmarked for that purpose turns upon an analysis of what constitutes a payment "under the plan."

*Id.* at 587. The Court further noted that it believed Congress intended to use the term "under the plan" to mean those payments which result from the operation of Chapter 12 bankruptcy law. *Id.* at 588. The Court ruled that "[g]enerally, a plan should be drafted to include trustee payment of obligations impaired by bankruptcy law, and to

exclude obligations which are not." *Id.* The Court in *Fulkrod* held that the statutory trustee's fee should be assessed against all payments made by the trustee and that the trustee should disburse all payments on impaired claims in the absence of a contrary plan provision. *See, also, In re Rott,* 73 B.R. 366, 376 (Bankr.D.N.D.1987) (The Court was of the opinion that all payments to impaired claimholders, made during the three to five year term of the plan, were to be considered "under the plan" and thus, subject to the trustee's percentage fee).

B. The alternate view is that the Debtor may pay impaired claims outside the plan and the Debtor is not required to pay the statutory trustee fee on those monies. Courts having this view rely on the language "received by such individual" in 28 U.S.C. § 586(e)(2), which those Courts interpret as meaning that the trustee is entitled to compensation based upon a percentage of those monies the trustee actually receives. In *In re Overholt,* 125 B.R. at 207, the Court noted that this phrase implies that in some instances the trustee will not receive all monies prior to disbursement. The Court in *Overholt* also noted that the legislative history provided that the purpose of a Chapter 12 was to provide an inexpensive and less complex alternative to Chapter 11. *Id.* The Court in *Overholt* concluded that §§ 1225 and 586, when read together, allow for the direct payment of modified claims to creditors and that the trustee must actually receive the monies in order to receive a percentage fee.

C. However, this Court believes that the *Fulkrod* decision is controlling. The Debtor has reaped the benefits of bankruptcy by filing Chapter 12 and therefore, the Debtor must pay the administrative costs associated with filing Chapter 12. The Court in *Wagner* also found that the *Fulkrod* decision seemed preferable. However, in *Wagner,* the plan had already been confirmed and a provision provided for direct payments made by the debtors. In the instant case, the Plan was silent regarding direct payments to the creditors. As a result, the *Wagner* decision is distinguishable from the case at bar.

D. The Trustee relies on *In re Vandevier,* Case No. 93–70648, 1994 WL 804117 (Bankr.E.D.Okla.1994). However, in *Vandevier,* the Trustee actually received the money prior to disbursement. Also, in *Foulston v. BDT Farms (In re BDT Farms)* 21 F.3d 1019 (10th Cir.1994) the Court concluded that § 586(e)(2) was ambiguous and therefore, the Court had to defer to the interpretation of the statute by the Executive Office of the United States Trustee's Office which provided that the standing trustee was entitled to a percentage fee of all monies disbursed. That was not the situation in the case at bar. The Bank's reliance on 11 U.S.C. § 330 is misplaced. Section 586 of Title 28 of the United States Code provides for the payment of Trustee fees in Chapter 12 cases.

E. In the instant case, the plan provides that the secured creditor would be paid in eight annual payments, the first being on October 1, 1992 with the final payment due on October 1, 1999. The parties agree that the Debtor would be eligible for discharge after the October 1, 1994 payment. By the Bank's own admission, in August, 1994, the Debtor took all the stocker/feeder yearlings to Oklahoma City for sale. The total sales price was approximately $87,918.00 from which the Debtor made its October 1, 1994 annual payment. The balance of approximately $42,818.00 remains in the Debtor–in–Possession account.

Even though the Trustee did not know that the cattle were being sold, the sale took place in August, 1994, when the Debtor was subject to the supervision of the Trustee. The Debtor made its October, 1994 annual payment to the Bank out of the proceeds of the sale and the remainder is in the escrow account. These proceeds were received by the Debtor prior to the time it was eligible for discharge and while the Debtor was still protected by the Bankruptcy Code. As a result, this Court finds that the Trustee is entitled to the statutory percentage fee of the money paid into the escrow account.

IT IS THEREFORE ORDERED that the Motion for Order Directing Payment of

Trustee's Fee from Escrow Account is hereby **granted.**