United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 11, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-30574

R MICHAEL BOLEN, United States Trustee, Region 5,

Appellee,

versus

CARL A DENGEL,

Appellant.

Consolidated With
02-30929

CARL A DENGEL,

Appellant,

versus

BANK ONE, NATIONAL ASSOCIATION, successor by name change
to Bank One, Louisiana, National Association & successor
by merger & name change to First National Bank of Commerce

Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HIGGINBOTHAM, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this consolidated civil action, Carl A. Dengel ("Dengel") filed suit against the United States Trustee ("UST") and Bank One for withholding his standing trustee compensation and expenses. In particular, this dispute stems from the UST's interpretation of 28 U.S.C. § 586(e). The district court rendered judgment in favor of the UST and dismissed Dengel's law suit against Bank One. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1987 Dengel was appointed to be a Chapter 12 standing trustee for the U.S. Bankruptcy Court for the Eastern District of Louisiana. Standing trustees are appointed by the UST with the approval of the Attorney General consistent with 28 U.S.C. § 586 to facilitate the resolution of farmers' bankruptcies in designated regions. Dengel served as a standing trustee until he resigned on September 30, 1995. For performing these services, the standing trustee collects fees. A standing trustee's fees are made up of a percentage amount charged on payments made in individual bankruptcy cases and constitutes gross revenue to the standing trustee. Generally, the statute caps the percentage amount at 10%. From the fees, the standing trustee receives his compensation which is tantamount to his net income. His actual compensation may not exceed 5% of the payments made in bankruptcy cases. Also from the fees, the standing trustee is reimbursed for expenses which are the overhead costs for running the standing trustee's office (i.e, rent, insurance, administrative staff, etc). The standing trustee's fees are governed by 28 U.S.C. § 586(e).

In addition, in 1989, the Executive Office of the U.S. Trustee ("EOUST") created a policy Handbook promulgating a method for calculating the fees. The EOUST Handbook requires that standing trustees first pay all expenses with the remaining fees allocated to compensation. In effect, this policy promulgates the "expense first, funds available" method of calculating fees. The Handbook

2

also allows for unpaid expenses to be carried over from one year to the next, but not unpaid compensation. Beginning in 1989 Dengel submitted annual reports to the UST indicating the fees collected, the allocation of the fees to compensation and expenses, and the remaining surplus or deficit. Despite the Handbook policy, Dengel continued to allocate 5% of fees to expenses and 5% to compensation, rather than employing the "expense first" method of disbursement. Dengel also calculated his loss carryforward of compensation and expenses from year to year resulting in paying his compensation before all of the year's expenses had been paid in violation of the Handbook policy.

In November 1994, Dengel initiated litigation against the UST contesting the Handbook's "expense first, funds available" method of calculation. In that case, Dengel interpled approximately $5,787 representing a 10% fee from certain pending Chapter 12 cases. These funds were deposited in the court's registry. The district court dismissed that case for lack of subject matter jurisdiction consistent with § 586(b). Dengel did not appeal this decision. Thereafter, Dengel deposited the disputed compensation and expense checks written after November 1994 into an interest bearing account at Bank One that he called "TF12." These checks were derived from Chapter 12 cases under Dengel's administration between November 1994 and October 1995. The total deposited in that account is approximately $26,000. Except for one $14,000 disbursement authorized by the UST, the funds remain in the TF12 account. Ultimately, $5,786.80 remains on deposit in the court's registry and $11,950.63 remains in the TF12 account.

During Dengel's tenure, the Office of Inspector General ("OIG") periodically audited Dengel's annual reports. Both the 1992 and 1994 reports found deficiencies in Dengel's record keeping. In the 1995 audit report, the OIG found that Dengel had not corrected the prior deficiencies and that he was incorrectly carrying over unpaid compensation as well as expenses. Following

3

Dengel's resignation, the OIG ordered a routine close-out audit. His records, however, were not auditable and had to be reconstructed by his successor trustee. This 1997 Audit was focused solely on the incorrect payment of fees. Following the compensation policies in the Handbook, the OIG concluded that Dengel received a net overpayment, and therefore, the funds escrowed in the court's registry and the TF12 account should be turned over to the UST. Moreover, the OIG concluded that Dengel actually owed the UST an additional $2,843.

In 1998, the UST initiated a declaratory judgment action against Dengel in the bankruptcy court. The suit was then lodged in the district court after Dengel responded with compulsory counterclaims and third party claims against Bank One, the former UST, Region 5 and the Assistant UST, Region 5. In April 2000, The district court referred the action to the bankruptcy court. In July 2000, Bank One filed a Rule 12(b)(6) motion to dismiss. Bank One also moved to interplead seeking to deposit the funds in the trustee account in the registry of the court. In September 2001, the bankruptcy court issued its report and recommendations in which it gave the EOUST Handbook deference in interpreting § 586(e) and concluded that the UST's calculation of Dengel's compensation was correct. In March 2002, The district court reviewed the bankruptcy court's recommendations de novo and rendered judgment in favor of the UST's interpretation giving some deference to the policy in the Handbook and finding that the agency's interpretation has "the power to persuade." In July 2002, the district court granted Bank One's motion to dismiss for the reasons set forth in the bankruptcy court's recommendations and reasons. Dengel now appeals both the judgment in favor of the UST's interpretation and calculation as well as the order granting Bank One's 12(b)(6) motion to dismiss.

## DISCUSSION

4

I.      Statutory Interpretation

Dengel argues that the district court erred when it granted judicial deference to the UST's

interpretation of 28 U.S.C. § 586[1] as outlined in the EOUST Handbook[2] under Chevron U.S.A., Inc.

---

[1]The portion of the statute that is the subject of the present dispute reads as follows:
    (e) (1) The Attorney General, after consultation with a United States trustee that has
    appointed an individual under subsection (b) of this section to serve as standing
    trustee in cases under chapter 12 or 13 of title 11 [11 USCS §§ 1201 et seq. or 1301
    et seq.], shall fix--
        (A) a maximum annual compensation for such individual consisting of--
            (i) an amount not to exceed the highest annual rate of basic pay in effect for
            level V of the Executive Schedule; and
            (ii) the cash value of employment benefits comparable to the employment
            benefits provided by the United States to individuals who are employed by the
            United States at the same rate of basic pay to perform similar services during
            the same period of time; and
        (B) a percentage fee not to exceed--
            (i) in the case of a debtor who is not a family farmer, ten percent; or
            (ii) in the case of a debtor who is a family farmer, the sum of--
                (I) not to exceed ten percent of the payments made under the plan of
                such debtor, with respect to payments in an aggregate amount not to
                exceed $ 450,000; and
                (II) three percent of payments made under the plan of such debtor,
                with respect to payments made after the aggregate amount of
                payments made under the plan exceeds $ 450,000;
                based on such maximum annual compensation and the actual,
                necessary expenses incurred by such individual as standing trustee.
    (2) Such individual shall collect such percentage fee from all payments received by such
    individual under plans in the cases under chapter 12 or 13 of title 11 [11 USCS §§ 1201 et
    seq. or 1301 et seq.] for which such individual serves as standing trustee. Such individual shall
    pay to the United States trustee, and the United States trustee shall deposit in the United
    States Trustee System Fund--
        (A) any amount by which the actual compensation of such individual exceeds 5 per
        centum upon all payments received under plans in cases under chapter 12 or 13 of title
        11 [11 USCS §§ 1201 et seq. or 1301 et seq.] for which such individual serves as
        standing trustee; and
        (B) any amount by which the percentage for all such cases exceeds--
            (i) such individual's actual compensation for such cases, as adjusted under
            subparagraph (A) of paragraph (1); plus
            (ii) the actual, necessary expenses incurred by such individual as standing
            trustee in such cases. Subject to the approval of the Attorney General, any or

5

v. Natural Resources Defense Council, Inc., 104 S. Ct. 2778 (1984). We conclude that the district court did not err because under Christensen v. Harris County, 120 S.Ct. 1655 (2000), such a handbook may be strongly persuasive. Moreover, we conclude that the UST's interpretation was reasonable and comports with its statutory authority to develop such a method of calculation.

A.      Standard of Review

We review the district court's interpretation of § 586 de novo. United States v. Rasco, 123 F.3d 222, 226 (5th Cir. 1997). To the degree that any factual determinations of the district court are at issue, we review for clear error. In re Miller, 290 F.3d 263, 266 n.2 (5th Cir. 2002). The crux of the issues on appeal is whether the district court appropri ately gave deference to the Handbook's interpretation of 28 U.S.C. § 586(e). This is a matter of statutory interpretation. "Hence we must decide (1) whether the statute unambiguously forbids the Agency's interpretation, and if not, (2) whether the interpretation, for other reasons, exceeds the bounds of the permissible." Barnhart v. Walton, 122 S. Ct. 1265, 1269 (2002).

B.      The Executive Office of the U.S. Trustee has authority under the statute.

---

all of the interest earned fro m the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

28 U.S.C. § 586(e).

[2]The EOUST Handbook policy interpreting this statute sets forth the appropriate method for calculation of expenses and compensation:

A trustee must pay all expenses before a trustee can receive compensation, and while unpaid expenses may be carried over to the next year, unpaid compensation cannot be carried forward. Similarly, surplus expense funds which should be paid to the United States Trustee for payment to the Treasury ... in any calendar year may not be carried into a succeeding calendar year, except as otherwise allowed by the Executive Office. The surplus funds must instead be paid promptly to the United States Trustee for payment to the Treasury.

Dengel argues that the EOUST Handbook is not entitled to deference for interpreting § 586(e) because § 586 does not confer authority upon the EOUST to create laws or regulations relating to compensation of standing trustees. Dengel refers to the concept of expressio unius est exclusio alterius as support for his argument. The district court determined that § 586(e)(1) delegates authority to fix a maximum annual compensation and percentage fee to the Attorney General. To support its conclusion, the district court reviewed the entire statute and determined that the Attorney General has a variety of authority under § 586(c) and (d). The UST asserts that the Attorney General has broad statutory authority to set a fee within the parameters stated in the statute. The UST argues that Dengel's expressio unius est exclusio alterius argument is misguided and that the statutory maximum of standing trustee compensation does not place a limit on the Attorney General's, through the EOUST's, authority to determine the manner and order in which compensation and expenses are to be paid. We are persuaded by the UST's argument. Based on the plain language of the statute, Congress has delegated broad authority to the agency to regulate standing trustee compensation and the percentage fee. Section 586(e)(1) specifically prescribes that "The Attorney General ... shall fix ... a maximum annual compensation ... [and] ... a percentage fee." 28 U.S.C. § 586(e)(1) (emphasis added).

In addition to the language of the statute, Christensen v. Harris County, 120 S.Ct. 1655 (2000) supports the Attorney General's authority to institute such a policy. In Christensen, the Supreme Court determined that the Fair Labor Standards Act (FLSA) limits the State "from compelling employees to utilize accrued compensatory time." 120 S. Ct. at 1660. In that case, Harris County, Texas gave employees statutorily required accrued compensatory time as payment for overtime above the statutory maximum of 40 hours per week. The County found that employees were accruing more

compensatory time than it was going to be able to afford to pay out. Upon request by the County, the Department of Labor issued an opinion letter authorizing it to require non-exempt employees to use or take compensatory time. In response, the County instituted a policy setting a maximum number of compensatory hours that may be accumulated and if the employee does not take steps to reduce accumulated compensatory time, the County may order the employee to use his compensatory time at specific times. Although the employees conceded that "nothing in the FLSA expressly prohibits" Harris County's policy, they complained that according to the canon of expressio unius est exclusio alterius, the "express grant of control to employees to use the compensatory time, subject to the limitation regarding undue disruptions of workplace operations, implies that all other methods of spending compensatory time are precluded." Id. at 1660. The Supreme Court found this argument unpersuasive explaining that the fact that the statute provides a "minimal guarantee that an employee will be able to make some use of compensatory time when he requests to use it," does not mean that the statute does not set forth "the exclusive method by which compensatory time can be used, but [sets] up a safeguard to ensure that an employee will receive timely compensation for working overtime." Id. at 1661. Although the Supreme Court acknowledged that "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode," Id. at 1660, "the thing to be done" in the disputed statute is the minimum guarantee. Id. at 1661. In other words, the Supreme Court interpreted the statute in Christensen to merely provide the parameters in which the County can administer compensatory time.

Similarly, Dengel expresses the misguided theory that under expressio unius est exclusio alterius, the statute limited the Attorney General's authority to fixing a percentage fee and a maximum annual compensation to the exclusion of any other activity. We conclude, however, that "the thing

to be done" in the present statute is the 5% maximum allocation of bankruptcy payments to compensation. The statute guarantees a compensation ceiling of 5% but does not prohibit the Attorney General from instituting a method for calculating compensation and expenses, nor does the statute guarantee that trustees will receive the full 5% for compensation. Rather the Attorney General is prohibited from setting an annual maximum compensation exceeding 5% of bankruptcy payments. The Attorney General's "expense first" policy does not change the maximum percentage allowable, it simply sets a calculation method. Thus, the agency's actions do not conflict with the language of the statute.

C.     The statute is ambiguous.

To determine whether a statute is ambiguous, we must use the traditional canons of statutory interpretation. This includes looking to the language of the statute itself, the larger statutory context, and the legislative history. See Walton, 122 S. Ct. at 1269.

In this case, the statute's silence on the calculation of compensation and expenses indicates its ambiguity. The district court relied on the Tenth and Eighth Circuit's findings in In re BDT Farms, Inc., 21 F.3d 1019, 1023 (10th Cir. 1994) and Pelofsky v. Wallace, 102 F.3d 350, 354 (8th Cir. 1996), that § 586(e) is ambiguous albeit in an application other than the one at issue herein, to find that the statute does not preclude nor mandate the expense first method of calculation. Dengel challenges the district court's finding arguing that such an omission, does not reflect ambiguity but rather, the lack of statutory authority for the policy. Dengel asserts that because the statute mentions compensation before it mentions expenses in both subsections (e)(1) and (e)(2), and because the "expense first" policy does not appear in the statute, there is no ambiguity, and therefore, the statute is clear that both compensation and expenses are to be allocated from the trustee fees. The UST

9

argues that the statute is ambiguous because it is silent as to the order in which compensation and expenses are to be paid to standing trustees. The UST asserts that the statute's silence as to how the Attorney General is to fix the trustee fee reflects a gap in the statutory language and therefore the statute is ambiguous. We find the UST's assertions persuasive.

Although the relevant portions of § 586(e) and Chapter 12 refer to both compensation and expenses, there is no mention of the order in which to calculate those expenses. This statutory gap presents a problem of ambiguity. See Walton, 122 S. Ct. at 1270 ("[S]ilence, after all, normally creates ambiguity. It does not resolve it"); Chevron, 104 S. Ct. at 2782 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."). Both the Eighth and Tenth Circuits support the conclusion that § 586(e) is ambiguous, albeit for different reasons. "After consideration of the statutory language and context" in Pelofsky, the Eighth Circuit concluded "that the meaning of section 586(e) is ambiguous." 102 F.3d at 354. Although the Eighth Circuit was deciding a different issue than that presented in the instant case, the difference is not significant. In the present case, the issue is whether the EOUST Handbook method for calculating compensation is entitled to deference. In Pelofsky, the Eighth Circuit was faced with whether the EOUST Handbook method for calculating the percentage fee as required under § 586(e)(1)(B) was entitled to deference. Just as in the present case, the parties disagreed in the method of calculation. The UST argued that section 586(e)(2) governs the calculation of the percentage fee while the debtors argued that § 586(e)(1)(B) was the applicable section and that § 586(e)(2) must be read in conjunction with § 586(e)(1). The Eighth Circuit analyzed each contention within the context of Chapter 12 and found support for each

interpretation. Moreover, the Eighth Circuit found no legislative history for clarification of Congressional intent, and therefore, found § 586(e) ambiguous.

The Tenth Circuit, in In re BDT Farms, addressed the same issue of the method for calculating the percentage fee required under § 586(e). The Tenth Circuit concluded that § 586(e) is ambiguous because there are divergent judicial interpretations of the statute. Those cases, the Tenth Circuit explained, "add confusion rather than clarity to the construction of § 586(e)." 21 F.3d at 1023. Like the Eighth Circuit, the Tenth Circuit did not find supportive legislative history to clarify the meaning of the statute. Moreover, the Tenth Circuit found that both interpretations of § 586(e) found support in the larger statutory context.

Although the instant case presents a slightly different issue, determining how the Attorney General, through the EOUST, is t o calculate the standing trustee's compensation and expenses is fundamentally similar to the issue determined by the Eighth and Tenth Circuit. Notwithstanding the nuanced difference of the issues, under the same analysis, we conclude that § 586(e) remains ambiguous.

D.      The UST Handbook is not entitled to Chevron deference.

After finding that the statute is ambiguous, the second step in the Chevron analysis is to determine "whether the agency's answer is based on a permissible construction of the statute." 104 S. Ct. at 2782. We find that it is. In this case, however, the agency's interpretation comes from a published Handbook rather than regulations. The Supreme Court has ruled that "[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law–do not warrant Chevron-style deference." Christensen, 120 S. Ct. at 1662. As the EOUST Handbook qualifies as a policy

11

statement, agency manual, or enforcement guideline, this Court cannot give it <u>Chevron</u>-style deference. Nonetheless, this Court may find the Handbook persuasive. <u>Id</u>. at 1663 ("Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'").

The purpose of the "expense first" policy is to encourage standing trustees to reduce expenses. This purpose comports with the limited legislative history available. Although there is no legislative history precisely on the method of calculation of trustee compensation, we find the House Judiciary Committee's underlying policy for structuring the fee system outlined in § 586 instructive:

> The Attorney General will be able to utilize the private sector to provide personalized efficient service and to keep subordinate employees of the standing trustee off the public payroll. The fee system is designed to encourage the standing trustees to keep costs low at the risk of reduced compensation.

H.R. REP. NO. 95-595, at 107 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6068 and <u>Collier on Bankruptcy</u> App. Pt. 4-1176. Although this legislative history references the 1978 Act which was a predecessor to the 1986 Act, it sheds some clarity on the purpose of the fee structure. The Handbook's policy is only persuasive and is not entitled to deference, nevertheless, our conclusion that the Attorney General is not prohibited from instituting the "expense first" policy comports with the plain language of the statute.

As the Supreme Court noted in <u>Christensen</u>, "no relevant statutory provision expressly or implicitly prohibits Harris County from pursuing its policy of forcing employees to utilize their compensatory time." 120 S. Ct. at 1663. Similarly, section 586(e) does not appear to either mandate or preclude the "expense first" policy. Notwithstanding our finding that the statute is ambiguous, the

12

Supreme Court's analysis in Christensen also provides strong support for finding that the statute unambiguously does not prohibit the Attorney General, through EOUST, to institute the "expense first" policy, and therefore, the EOUST has not violated § 586(e).

Thus, although the Handbook is not entitled to full Chevron deference, the expense first policy is persuasive, particularly in light of the limited available legislative history and the entire context of the statute. We conclude that the UST's policy is not prohibited by § 586(e).

II.    Calculation of the Standing Trustee Fees

Dengel argues that the UST's calculation of his compensation fees are arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706 (the "APA"). The APA compels that appellate review of agency action under APA § 706 is for abuse of discretion.

Because the "expense first" policy is not prohibited by the statute, we find that the UST had authority to disallow Dengel from drawing any compensation for the years in dispute. The bankruptcy court explained that the zero compensation orders were correctly calculated because the Handbook specifically disallows any carryover of unpaid compensation from year to year. Because Dengel carried-over his unpaid compensation each year in violation of the Handbook policies, the bankruptcy court accepted the exclusion of carryovers in the UST's calculation and the district court affirmed.

The "expense first" policy reasonably comports with the plain language of the statute as does the calculation which effectively disallows any compensation for services rendered by Dengel. The statute sets a ceiling for compensation allocated from fees but does not set a floor. The UST contends that its carryover limitation does not deprive the standing trustee from receiving compensation. Rather, the compensation order created by the UST is based on the standing trustee's own budget. The UST contends that it is only because Dengel purposely violated the Handbook's "expense first"

13

and "no carryover of compensation" policies, that the OIG's audit resulted in a zero compensation finding for the years in dispute. We agree. The statute does not guarantee that the standing trustee will receive a full 5% of bankruptcy payments as compensation.

III.    Bank One's 12(b)(6) Motion to Dismiss

Before determining whether the district court erred in granting Bank One's 12(b)(6) motion to dismiss, we must determine what was before the district court and the scope of its ruling.

A.    Scope of the district court's order

In his third party counterclaim against Bank One, Dengel complained that Bank One: "1) improperly disclosed privileged information, 2) froze the account for four years, 3) paid minimum interest, 4) did not respond or seek a resolution of the problem, 5) reneged on a loan commitment, and 6) damaged Carl Dengel's creditworthiness." In sum, his counterclaim amounts to seeking damages for Bank One's failure to turn over the funds in the TF12 account to Dengel and for breaching the loan commitment. He attached as exhibits various letters between the parties, including an unsigned loan commitment letter. The letter states that the commitment shall be null and void if Dengel's and his wife's signatures representing acceptance are not received by August 25, 1995 and if the commitment is not funded by September 23, 1995. The attachments do not include Dengel's acceptance of the loan commitment nor do they include confirmation that the loan has been funded.

Bank One filed a 12(b)(6) motion to dismiss Dengel's "lender liability claim ... [f]or the reasons set forth in the attached memorandum." In the attached memorandum supporting the 12(b)(6) motion, Bank One requested that:

> If the Court accepts the recommendation of the bankruptcy court, then Bank One's interpleader claim will be moot, and Dengel's claim against Bank One for the turnover of the funds should be dismissed with prejudice.

14

Also in the attached memorandum, Bank One requested that: "[B]ased on Dengel's third party complaint and the attachments thereto, Dengel's lender liability claim against Bank One should be dismissed for failure to state a claim upon which relief may be granted." Although Bank One asked that both claims be dismissed, Bank One exclusively asked for a 12(b)(6) dismissal on Dengel's lender liability claim. On July 22, 2002 the district court entered judgment on Bank One's motion: "Considering the foregoing order and finding there is no just cause for delay as provided in Fed.R.Civ.P. 54(b), IT IS ORDERED that judgment be entered against Carl A. Dengel and in favor of Bank One dismissing Carl A. Dengel's third-party claim with each party to bear its/his own costs." The referenced "foregoing order" reads: "Considering the reasons set forth in this Court's adopting the Report and Recommendation of the Bankruptcy Court, IT IS ORDERED that Bank One's Motion to Dismiss is GRANTED."

Regarding his claim for damages resulting in Bank One's refusal to turn over the funds in the TF12 account, the district court only granted dismissal on Dengel's lender liability claim and not on his other claims. On its face, Bank One only moved to dismiss Dengel's lender liability claim. Viewing the motion in the light most favorable to the nonmoving party, Bank One did not request dismissal of all third-party claims against it.[3] Fairly read, we cannot construe the language in Bank One's supporting memo as part of its 12(b)(6) motion to dismiss Dengel's lender liability claim. Instead, Bank One merely made a vague assertion that its interpleading motion should be moot and that Dengel's other third-party claims should be dismissed with prejudice. As Bank One moved to dismiss only Dengel's lender liability claim, we conclude that the district court's order relates to only the

---

[3]The district court has not ruled on Bank One's motion to interplead the funds. The third party claims against the former UST, Region 5 and the Assistant UST, Region 5 also remain outstanding.

15

lender liability claim. The district court never rendered final judgment in Bank One's motion to interplead the funds into the court's registry.

### B.     Standard of Review

We review the district court's dismissal of a claim under the Federal Rules of Civil Procedure 12(b)(6) de novo. Vulcan Materials Co. v. Tehuacana, 238 F.3d 382, 387 (5th Cir. 2001)."The complaint must be liberally construed in favor of the plaintiff, and all the facts pleaded in the complaint must be taken as true" to determine whether the plaintiff has any valid claim for relief. Brown v. Nationsbank Corp., 188 F.3d 579, 586 (5th Cir. 1999). The dismissal will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." U.S. ex rel Thompson v. Columbia HCA/Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).

In this case, however, the district court's order must be construed as a grant of summary judgment because the district court did not exclude Dengel's affidavit which was outside of the submitted pleadings. See Burns v. Harris County Bail Bond Bd, 139 F.3d 513, 517 (5th Cir. 1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."). We, therefore, construe Bank One's motion to dismiss as a summary judgment motion and apply the applicable standard of review. See  Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002). Even if the district court erred by failing to review Bank One's motion to dismiss as a motion for summary judgment, this error is reversible only if Dengel had no notice or opportunity to refute Bank One' allegations in the motion to dismiss. See Herron v Herron, 255 F.2d 589, 594 (5th Cir. 1958) (reversing a grant of a motion to dismiss without converting it to a motion for summary judgment because the Appellant did not have notice or opportunity to examine a material fact to the

16

underlying claim). "[E]rror in notice is harmless if the nonmoving party admits that he has no additional evidence anyway or if ... the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." Powell v. United States, 849 F.2d 1576, 1582 (5th Cir. 1988). By submitting his extra-pleading affidavit, we conclude that Dengel was put on notice that the district court could have converted Bank One's motion to dismiss into a motion for summary judgment. Moreover, we find that Dengel presented no genuine issues of material fact to overcome summary judgment. Thus, the district court committed no reversible error.

As an initial matter, Dengel's affidavit is inappropriate summary judgment evidence. Thus, we do not consider it here. Rule 56(e) requires statements in affidavits to be based on personal knowledge and not based on information and belief. Richardson v. Oldham, 12 F.3d 1373, 1378 (5th Cir. 1994) (instructing that statements "based on information and belief ... [are] struck as not based on personal knowledge and therefore fail[] the requirements of Fed.R.Civ.P. 56(e)"). In his affidavit, Dengel specifically noted that "on information and belief, and to the best of affiant's recollection, the original letter was timely signed by affiant and Deborah Walworth [his wife]..." Because Dengel's affidavit is expressly based merely on information and belief, it is struck as not based on personal knowledge and therefore fails the requirements of summary judgment evidence.

Dengel's pleadings present no factual dispute to overcome summary judgment nor do his pleadings state a claim upon which relief may be granted. "[W]e consult the applicable law to ascertain the material factual issues." F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ, 109 F.3d 1084, 1087 (5th Cir. 1997). In this case, we look to Louisiana law. See Id. ("We look to state law for rules governing contract interpretation."). Because Dengel did not plead that he and his wife signed the credit agreement and because the alleged credit agreement attached to the third party claim is not

17

signed by Dengel and his wife as required by La. R.S. 6:1122, Dengel may not maintain an action for the alleged breach under Louisiana Law. Under Louisiana law, "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La. R.S. 6:1122 (2003).

Dengel also urges that even though the copy of the commitment letter was not signed, there is other evidence attached to his third party counterclaim that establishes that there was a written agreement signed by the creditor and the debtor. In particular, Dengel offers that Bank One scheduled a loan closing which "very strongly implies that a valid, binding and written loan commitment signed by both parties existed between the Bank and Dengel." We disagree. Under Louisiana law, "a writing cannot qualify as a credit agreement if parol evidence must be received in order to establish that status." Fleming Irr. Inc. v. Pioneer Bank & Trust Co., 661 So. 2d 1035 (La. App. 2nd Cir. 1995). Regardless of whether Dengel's evidence that there was a loan commitment absent a signed commitment letter constitutes parole evidence, under Louisiana law, "the written agreement must be perfect and complete within itself." Id. In this case, Dengel has not produced a complete agreement under Louisiana law subject to a genuine issue of material dispute required to overcome summary judgment or on which to state a claim for relief.

## CONCLUSION

Under the traditional cannons of statutory interpretation, 28 U.S.C. § 586(e) does not prohibit the Attorney General from instituting an "expense first" method of calculating expenses and compensation. The EOUST Handbook's policy that compensation cannot be carried forward from

18

year to year comports with the plain language of the statute. The district court did not err in so ruling and therefore, we AFFIRM the district court's judgment.

Moreover, we construe the district court's order granting Bank One's motion to dismiss Dengel's lender liability claim as granting summary judgment to Bank One and AFFIRM that order. AFFIRMED.