# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 13-30589

———————

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2014

Lyle W. Cayce
Clerk

EARL TRUVIA,

        Plaintiff - Appellant

v.

HARRY F CONNICK, in his capacity as District Attorney for the Parish of Orleans; GEORGE HEATH, Detective, Individually and in his official capacity as Officer of the City of New Orleans Police Department; JOSEPH MICELI, Detective, Individually and in his official capacity as Officer of the City of New Orleans Police Department; CITY OF NEW ORLEANS; EDDIE JORDAN,

        Defendants - Appellees

_____

GREGORY BRIGHT,

        Plaintiff - Appellant

v.

HARRY F CONNICK, in his capacity as District Attorney for the Parish of Orleans; GEORGE HEATH, Detective; JOSEPH MICELI, Detective; CITY OF NEW ORLEANS; EDDIE JORDAN,

        Defendants – Appellees

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:04-CV-680, 2:04-CV-682

———————————

No. 13-30589

Before REAVLEY, JONES and GRAVES, Circuit Judges.

EDITH H. JONES, Circuit Judge: *

Gregory Bright and Earl Truvia, previously convicted in Louisiana state court for the 1975 murder of Elliot Porter, appeal the district court's denial of various civil rights and constitutional claims against the City of New Orleans, the New Orleans Police Department, former officers and detectives, and former Orleans Parish district attorneys. After due consideration, we AFFIRM the district court's dismissal of their claims.

## I. FACTS AND PROCEEDINGS

Gregory Bright and Earl Truvia ("Appellants") were convicted in Louisiana state court for the October 31, 1975 murder of Elliot Porter. Each was sentenced to life imprisonment without parole. Nearly three decades later, in 2002, a state court vacated Appellants' convictions upon finding that the State of Louisiana had suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), during Appellants' criminal trial. Specifically, the court found that the State had suppressed (1) a police report and "attached statements" showing that before arresting Appellants for Porter's murder, the police were pursuing two other suspects based on a "drug deal gone bad" murder theory; and (2) evidence concerning the mental history and reputation for truthfulness of the State's sole eyewitness, Sheila Caston Robertson. In March 2003, the Louisiana Supreme Court denied the State's application for a writ of certiorari. *See State v. Truvia*, 839 So. 2d 35 (La. 2003).

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30589

The State dismissed the criminal charges filed against Appellants, who were subsequently released from custody.

In 2004, Appellants filed suit against the City of New Orleans ("the City"); the New Orleans Police Department ("NOPD"); five former NOPD officers and detectives, including detectives Joseph Miceli and George Heath; former Orleans Parish district attorneys Harry Connick and Eddie Jordan; and two former assistant district attorneys.[1]  Appellants asserted claims under 42 U.S.C. §§ 1983, 1985, and 1988, and alleged violations of the Fourth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.  In 2007, Connick and Jordan, the City, Miceli, and Heath (collectively "Appellees") filed two separate motions for summary judgment.  Eventually, the district court granted both motions and entered judgment in Appellees' favor on September 11, 2012.  Appellants filed a Motion for Reconsideration and/or to Alter/Amend Judgment, which the district court denied, and Appellants timely appealed.

## II.    DISCUSSION

Appellants raise three issues on appeal.  Appellants assert that they suffered a constitutional violation caused by either the DA's policy of withholding exculpatory evidence from criminal defendants in violation of *Brady v. Maryland*, or the office's deliberate indifference to *Brady* violations,

---

[1] Claims against the two assistant district attorneys and against Connick in his individual capacity were dismissed by the district court in 2004.  Connick remains subject to the present suit only in his official capacity as the former district attorney for Orleans Parish. Similarly, Jordan was subject to suit only in his official capacity as former district attorney and was named as a defendant for the sole reason that he was successor to Connick as Orleans Parish district attorney.  Appellants voluntarily dismissed their claims against three of the five former NOPD officers and detectives, leaving Heath and Miceli as the only detective defendants.

3

or the DA's failure to train its prosecutors to enforce *Brady*. Similarly, Appellants contend that the City maintained a police department policy of withholding exculpatory evidence from criminal defendants and failed to train NOPD officers on *Brady* requirements, thereby violating Appellants' constitutional rights. In addition to pursuing relief under Section 1983 based on municipal liability, Appellants assert that NOPD detectives Heath and Miceli violated Appellants' constitutional rights by withholding exculpatory evidence material to their criminal trial.

### A. Standard of Review

We review the district court's grant of summary judgment *de novo*. *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009). This court applies the same standards as the district court, granting summary judgment where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*; *see* Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). The evidence in the record is reviewed in the light most favorable to and with all reasonable inferences drawn in favor of the non-moving party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). However, the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex,* 477 U.S. at 322, 106 S. Ct. at 2552. This court may affirm summary judgment on any ground

supported by the record and raised in the district court, "even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

### *B. Section 1983 Claim Against the DA's Office*

Appellants challenge the district court's ruling that rejected their claim under 42 U.S.C. § 1983 against the Orleans Parish district attorney's office under Connick. "To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotation marks omitted). Appellants assert here, as they did before the district court, that they suffered a constitutional violation within the meaning of Section 1983 due to Connick's policy of withholding exculpatory evidence from criminal defendants in violation of *Brady v. Maryland.*

Under *Brady*, a local government entity, including a district attorney's office ("DA office"), deprives a criminal defendant of his right to due process when it suppresses or withholds evidence that is both favorable to the defendant and material to his defense. *See, e.g., Smith v. Cain*, 132 S. Ct. 627, 630 (2012). In order to establish that a DA's office is liable under Section 1983, plaintiffs "must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quotations and citation omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, [or] practices so persistent and widespread as to practically have the force of law." *Id.* at 1359.

No. 13-30589

### *1. Policy or Practice*

Appellants offer several pieces of evidence as proof that Connick's DA office had a policy or a persistent and widespread practice of violating criminal defendants' *Brady* rights in the 1970s. First, they allege the DA office failed to turn over material exculpatory or impeachment evidence in their case about the State's only eyewitness, Sheila Caston Robertson. They further allege that in response to their pre-trial request for *Brady* material, the State replied that it had none or that the defendants were not entitled to such material. Second, they allege that the State gave similar "no possession or no entitlement" responses to pretrial *Brady* requests in other unrelated cases between 1974 and 1976. Third, they contend that in *Smith v. Cain*—a case unrelated to the one at hand—counsel for the Orleans Parish DA office admitted during oral argument that its policy was to refuse to turn over *Brady* evidence when the prosecutor determined that the evidence was not material. Fourth, they allege that Connick's DA office had a "policy" of not obtaining witness statements, police reports, and witness rap sheets from police files. Finally, they offered the affidavit of former Orleans Parish Assistant District Attorney Bill Campbell as evidence that the DA office had a policy in 1975 and 1976 of withholding exculpatory evidence.

Like the district court, we assume, *arguendo*, that the evidence Appellants claim was suppressed in their case was material and a *Brady* violation occurred. (The existence of a violation, we note, is disputed by the DA office.)[2] Nevertheless, appellants must go beyond their specific case and demonstrate that a pattern or policy of purposefully withholding exculpatory

---

[2] The issues Appellants raise to cast doubt upon Robertson's credibility did not manifest, according to their own evidence, until several years after their trial.

evidence from criminal defendants existed within the DA office during the relevant time period. The existence of a single *Brady* violation is insufficient to support a government entity's liability under Section 1983 for an unconstitutional policy or practice. *Thompson*, 131 S. Ct. at 1356.

Appellants thus direct our attention to discovery requests made by various counsel in other, unrelated cases around the time of their criminal trial and to the State's similar "no possession or no entitlement" responses. They have not, however, pointed to case law preceding their convictions that held the DA's office responsible for committing *Brady* violations or that upheld other criminal defendants' claims of *Brady* violations. In addition, as noted by the district court, facsimiles of requests for production and DA office responses thereto, without something more, do not show that *Brady* violations actually occurred in those cases, let alone that the DA's office had an unconstitutional policy or practice. This evidence does not create a triable fact issue as to whether the DA office had a policy of withholding *Brady* evidence from criminal defendants.

Appellants' focus on the oral argument before the Supreme Court in *Smith* likewise fails, because there was no "admission" that the DA office had a policy of refusing to turn over *Brady* evidence. To the contrary, counsel's statements concerned whether the State believed that a *Brady* violation had occurred when the State failed to turn over a particular prior inconsistent statement that was favorable to a single criminal defendant's defense. *See* Transcript of Nov. 8, 2011, oral argument for *Smith v. Cain*, No. 10-8145, at 43-53, http://www.supremecourt.gov/oral_arguments/argument_transcripts/

10-8145.pdf (last visited July 31, 2014). Accordingly, the oral argument in *Smith* does not advance the position that a policy of withholding exculpatory evidence was in force around the time of Appellants' criminal trial.

With respect to the claim that the DA office had a "policy" against prosecutors' reviewing certain police files in search of *Brady* material, the only evidence advanced by Appellants is a reference to testimony of the prosecutor in their case, Henry Julien. On its face, the testimony concerns Julien's views, relates to their sole case, and cannot create a fact issue concerning the office's policy.

Finally, the district court correctly excluded Campbell's affidavit from evidence based on his lack of personal knowledge and hearsay. Campbell's affidavit purported to address the status of the DA office's *Brady* policy *before* Campbell began serving as an intern there in 1977. "[Federal Rule of Civil Procedure] 56(e) requires statements in affidavits to be based on personal knowledge and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003). Because the district court did not abuse its discretion by excluding Campbell's affidavit as inadmissible, we do not consider it here.

Because the only probative evidence Bright and Truvia present relates exclusively to their case, the district court correctly held that Bright and Truvia have failed to establish the existence of a policy, custom, or practice in Connick's office in 1975 and 1976 of violating criminal defendants' *Brady* rights. However, in limited circumstances, a failure to train prosecutors regarding their *Brady* duties may rise to the level of official municipal policy. *Thompson*, 131 S. Ct. at 1359.

No. 13-30589

### 2. *Failure to Train*

Under a failure-to-train theory, Appellants must prove "both (1) that Connick, the policymaker for the district attorney's office, was deliberately indifferent to the need to train the prosecutors about their *Brady* disclosure obligation . . . and (2) that the lack of training actually caused the *Brady* violation in this case." *Thompson*, 131 S. Ct. at 1358. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotation marks omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Thompson*, 131 S. Ct. at 1360. In failure-to-train cases "culpability . . . is at its most tenuous," for the failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quotation and citation omitted).

In *Connick v. Thompson*, the Supreme Court most recently rejected a municipal liability claim that arose from a *Brady* violation perpetrated by an assistant Orleans Parish DA in the 1980's. *Thompson* held that a district attorney's office may not be held liable under Section 1983 for failure to train based on a single *Brady* violation. Moreover, as the Court noted, "[a]ttorneys are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." *Id.* at 1361. "A district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe those tools are insufficient to prevent future

9

No. 13-30589

constitutional violations in the usual and recurring situations with which the prosecutors must deal." *Id.* at 1363 (quotation and citation omitted). It is not enough to show that "because *Brady* has gray areas and some *Brady* decisions are difficult, prosecutors will so obviously make wrong decisions that failing to train them amounts . . . to a decision by the city itself to violate the Constitution." *Id.* at 1365 (quotation and citation omitted). It is in this light that we review Appellants' Section 1983 claim for failure to train.

To prove that Connick's office was deliberately indifferent to the need to train prosecutors on *Brady* requirements, Appellants contend that various Orleans Parish prosecutors committed multiple *Brady* violations in other cases, and the DA office did not have a policy to ensure assistant district attorneys immediately obtained witness statements from police in every case. None of this evidence shows that Connick's office was deliberately indifferent to a need for *Brady* training before Appellants' criminal trial in 1976. First, the *Brady* "violations" Appellants refer to are not proven *Brady* violations; instead, they are the same discovery requests made by counsel in other, unrelated cases to which the prosecutors responded by denying possession of *Brady* material. This evidence, as previously discussed, fails to show actual *Brady* violations, much less an unconstitutional pattern or policy. Second, Appellants' citations to over a dozen federal and state cases to show a "continuum" of *Brady* violations are not probative because the vast majority of them occurred after Appellants were convicted in July 1976. The two cases that predated July 1976, *Davis v. Heyd*, 479 F.2d 446 (5th Cir. 1973), *overruled by Garrison v. Maggio*, 540 F.2d 1271 (5th Cir. 1976), and *State v. Carney*, 334 So. 2d 415 (La. 1976), surely did not convey the requisite notice under a failure-to-train theory. *See Thompson,* 131 S. Ct. at 1360 (holding that not even "*four* reversals could . . . have put Connick on notice that the office's *Brady*

10

training was inadequate") (emphasis added). Third, Appellants have not provided any authority to support their assertion that the DA office was required, above and beyond *Brady*, to have a policy for obtaining all witness statements from police files.

Because Appellants have not shown that Connick was on actual or constructive notice of the necessity of *Brady* training for the office's attorneys prior to their convictions, the district court correctly held that that Connick is entitled to judgment as a matter of law.

*C. Section 1983 Claim Against the City*

Appellants contend that the City had a custom or policy of withholding exculpatory evidence from criminal defendants and failed to train NOPD officers on *Brady* requirements. Because Appellants' terse argument pertaining to the City is dedicated entirely to the City's alleged failure to train NOPD officers, their argument as to a general City policy is waived. *See Jason D.W. by Douglas W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) (even when the appellant listed a legal question in his statement of issues, his "failure to provide any legal or factual analysis of [the] issue on appeal waive[d] that issue").

Appellants' failure-to-train theory fails because they have not shown that the City was deliberately indifferent to a known need for better *Brady* training for its police officers. *Thompson*, 131 S. Ct. at 1358, 1360. As evidence that the City failed to train its officers, Appellants rely on admissions by Detectives Heath and Miceli during their depositions that they were unsure as to the meaning of "exculpatory" and "*Brady* material." Further, NOPD department regulations between 1972 and 1974 did not include a specific "policy on the handling and production of exculpatory evidence," and the daily reports of NOPD detectives were generally not forwarded to the DA office.

According to Appellants, the detectives' daily reports might have included exculpatory information such as arrests or witness statements. However, even when viewing this evidence in the light most favorable to Appellants, they have not demonstrated that, as of 1976, the City knew its *Brady* training for police officers was insufficient yet still made a "deliberate or conscious" choice in the face of such information "to endanger constitutional rights." *Estate of Davis*, 406 F.3d at 383; *see Thompson*, 131 S. Ct. at 1365 (explaining that "deliberate indifference" requires proof of the defendant's being on notice that, absent additional specified training, it was "highly predictable" that the defendant's employees would make incorrect *Brady* decisions). Absent a showing that the City was deliberately indifferent, there is no issue of fact with respect to the City's failure to train NOPD officers on *Brady* rights.

The district court correctly rejected Appellants' claims against the City.

*D.* Brady *Claims Against Detectives Heath and Miceli*

Appellants also alleged that NOPD detectives Heath and Miceli violated their constitutional rights by withholding exculpatory evidence during their criminal trial. The district court found no triable issues of fact that any evidence was suppressed and alternatively held the officers shielded by qualified immunity.

Qualified immunity shields a government official from Section 1983 liability if the official's acts were objectively reasonable in light of clearly established law at the time of the official's conduct. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quotation and citation omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Id.* (citation omitted). We evaluate qualified immunity under a two-part test: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and

(2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) (quotation marks omitted). "A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hernandez v. United States*, --- F.3d ---, 2014 WL 2932598, at *5 (5th Cir. 2014). By the time Appellants' criminal trial was underway in 1976, the law in this circuit was clearly established that a public official's concealment of material exculpatory evidence was a constitutional violation. *See Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008).

Appellants allege that Heath and Miceli suppressed such evidence in their case when the detectives: (1) withheld evidence of the arrests of three other people for the murder and then provided false testimony that one of these people had not been arrested; (2) withheld evidence that an eyewitness placed two other murder suspects at the scene of the crime, threatening to harm the victim over a "drug deal gone bad"; (3) provided misleading evidence/testimony that there was no credible information about the "drug deal gone bad" theory by claiming this was merely an unsubstantiated "rumor" with no supporting eyewitnesses; (4) withheld a background check on eyewitness Robertson which would have provided impeachment evidence; and (5) manipulated Robertson, who stated she did not know where the suspects lived, but then took Heath and Miceli to the suspects' apartments, and pointed out the incorrect address to Truvia.

The district court analyzed all of the proffered evidence and concluded as to each cited piece that there was no *Brady* violation by these officers or they were entitled to qualified immunity. We agree, largely based on the district court's careful exposition of the record.

No. 13-30589

We add a few comments responsive to Appellants reliance on post-summary judgment evidence offered in their Federal Rule of Civil Procedure 59 motion. As the district court noted in its opinion denying the motion, the newly proffered evidence would not have changed its conclusion. First, according to their depositions, the brief arrest and detention of three other suspects, including Smith and Navarre, ceased shortly after a phone call to the victim's mother, who identified one of them as a relative of the victim. No material defense value attached to this incident. Second, Alfred Marshall talked to some policeman (not identified by name) two weeks after the murder about his encounter with Symms and Johnston the night of the murder. As Marshall's deposition developed, it became clear that the local community was well aware of these individuals' potential involvement, and defense counsel actually questioned witnesses about them during the Appellants' trial. Thus, this information was not suppressed under *Brady* because it was ascertainable by the defense using reasonable diligence. *Brown v. Cain*, 104 F.3d 744, 750 (5th Cir. 1997) (citation omitted). Finally, the federal court is not bound by the findings in state habeas court in Appellants' favor, because that case involved different issues than municipal entity Section 1983 liability, and the state court made no finding about Miceli's or Heath's alleged suppression of evidence.

Accordingly, there was no genuine issue of material fact as to whether detectives Heath and Miceli violated Appellants' constitutional rights under *Brady*.

*E. Appellants' Motion for Reconsideration and to Alter/Amend Judgment*

Following the district court's grant of summary judgment for Appellees, Appellants filed a motion pursuant to Rule 59(e) for "Reconsideration and/or to Alter/Amend Judgment," attaching "newly-discovered evidence" they had not

previously submitted to the court.  The district court denied the motion.  We review the district court's order denying Appellants' motion for abuse of discretion.  *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).  "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Id*. (quotation marks omitted).

Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (quotation marks omitted).  Appellants asserted both grounds.  On appeal, Appellants do not dispute that the allegedly "newly-discovered evidence" was in fact not "new," and they offer no reason why this evidence could not have been presented earlier in opposition to Appellees' motions for summary judgment.  Ordinarily, an "unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a . . . motion for reconsideration," *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  As we and the district court noted, however, the newly offered evidence does not alter the outcome here.

Further, Appellants have failed to demonstrate a sufficient error of law or fact that warranted the district court's reconsideration of its summary judgment order.  Appellants claim that the "manifest error" upon which their motion was based was the district court's refusal to afford "full faith and credit" to Judge Elloie's decision and by using the testimony of former assistant district attorney Henry Julien in reaching its conclusion on the summary judgment motions.  However, neither of these points amount to "manifest error" worthy of Rule 59 reconsideration. The district court expressly indicated in its summary judgment order that for purposes of ruling on the Appellees'

summary judgment motions concerning the DA office and NOPD, the court assumed, without deciding, that a *Brady* violation occurred in connection with Appellants' 1976 criminal trial.  Even if the district court did improperly credit Julien's deposition testimony when ruling on Appellees' motions, the district court's grant of summary judgment was still proper for the reasons stated above.  Appellants have not shown that the district court abused its discretion in denying their Rule 59(e) motion.

## CONCLUSION

For these reasons, the judgment of the district court is **AFFIRMED.**