# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-41191

United States Court of Appeals
Fifth Circuit

**FILED**
November 5, 2019

Lyle W. Cayce
Clerk

DIEGO ALEXIS OBREGON,

      Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:17-CV-30

Before STEWART, CLEMENT, and HO, Circuit Judges.

PER CURIAM:*

     Diego Alexis Obregon appeals the district court's grant of summary judgment in favor of the United States (the "government") and dismissal of Obregon's claims under the Federal Tort Claims Act ("FTCA") against the government for damages arising from a car accident with a Border Patrol ("BP") agent. We AFFIRM the district court's judgment.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-41191

I.

On the night of June 7, 2015, after attending muster at about 10:00 p.m., BP Agent Robert Garcia went to pick up coffee for himself and two co-workers at a convenience store on Mines Road, a highway in Laredo, Texas. He drove his government-issued Ford F-150. About five miles into his drive back, while driving approximately 70 miles per hour (the speed limit on Mines Road), Agent Garcia collided with Appellant Diego Alexis Obregon's sedan. Obregon was entering Mines Road from a side road called Verde Boulevard that connected a subdivision to the highway. There is a stop sign at the intersection of Mines Road and Verde Boulevard, and cars on Verde Boulevard must yield to traffic traveling on Mines Road. Agent Garcia contends that he first saw Obregon's vehicle a split second before impact.

Immediately after the crash, Agent Garcia went to check on Obregon. Garcia found Obregon unconscious and went back to his car to call for help. His dispatch radio was not working, so he called 911 from his cellphone. In his deposition, Garcia testified that he turned on his "red and blues," (or "emergency lights"), to make approaching traffic aware of the accident. Another BP agent arrived at the scene by chance, and Garcia used the agent's radio to contact his supervisor. Shortly thereafter, the ambulance arrived and took Obregon to the hospital. Agent Garcia's supervisor also came and took photos of the scene. By this time, a group of onlookers had gathered at site of the crash. Finally, the Laredo Police Department ("LPD") investigators arrived. They put together a full crash report, including photos, witness statements, and a diagram of the crash.

Obregon testified that he did not recall anything from the accident. Additionally, LPD found that Obregon did not have a driver's license and had not taken any formal driver's education courses. Following the accident, LPD cited Obregon for failing to yield at a stop sign and driving without a license.

2

No. 18-41191

Obregon sued the United States under the FTCA, claiming Agent Garcia was negligent under Texas law. The government moved for summary judgment. The district court granted the government's motion, holding that no reasonable juror could find that Agent Garcia had breached his duty of care to Obregon. Further, the district court held that Obregon breached his own duty of care by running the stop sign on Verde Boulevard, and was unable to recover under Texas comparative-liability law as he was more than fifty-percent responsible for the accident.

Obregon asserts on appeal that there are genuine disputes of material fact as to (1) whether Agent Garcia's headlights were on at the time of the collision and (2) whether Agent Garcia was using his cellphone before the accident. Obregon claims that the district court made improper credibility determinations by crediting only the government's evidence on these issues, and thus, erred in granting summary judgment in favor of the government.

II.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). The court's role is "not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Summary judgment is proper "only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, we "may not make 'credibility assessments,' which are the exclusive province of the trier of fact." *La Day v. Catalyst Tech., Inc.,* 302 F.3d 474, 477

No. 18-41191

(5th Cir. 2002) (quoting *Dibidale of La., Inc. v. Am. Bank & Trust Co.*, 916 F.2d 300, 307–08 (5th Cir. 1990)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact." *Anderson*, 477 U.S. at 247–248.

## III.

The FTCA waives the sovereign immunity of the United States, making it liable for certain tort damages "caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The district court properly applied Texas negligence law. "To determine Texas law, this court looks first to the final decisions of the Texas Supreme Court." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014). Under Texas law, a negligence action requires the plaintiff to produce "evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *see Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 292 (5th Cir. 2016). Here, Agent Garcia and Obregon owed each other and other drivers a general duty of ordinary care. *Ciguero v. Lara*, 455 S.W.3d 744, 748 (Tex. App. 2015); *see Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex. 1968). Additionally, Texas drivers have a general duty to keep a proper lookout, which "encompasses the duty to observe, in a careful and intelligent manner, traffic and the general situation in the vicinity, including speed and proximity of other vehicles as well as rules of the road and common experience." *Carney v. Roberts Inv. Co.*, 837 S.W.2d 206, 210 (Tex. App. 1992).

No. 18-41191

The district court held that Obregon could not survive summary judgment "[b]ecause no reasonable juror could find that [Agent Garcia] breached his duty of care, [as] [Obregon] has failed to make the requisite showing on a necessary element of his prima facie case [of negligence]." Obregon contends that the district court made improper credibility determinations and ignored his summary judgment evidence that creates genuine disputes of material fact. Thus, he believes the district court erred in granting summary judgment in favor of the government. *See Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994) ("Credibility determinations have no place in summary judgment proceedings . . . [if] [t]he district court cho[oses] to believe the defendants' evidence over the plaintiffs' . . . that [is] error.").

Obregon first argues that there is a dispute of material fact about whether Agent Garcia was driving with his headlights on at the time of the accident. Obregon argues that the district court did not consider a sworn declaration from Gina Santillana, who claims she arrived at the scene of the accident "shortly after it occurred." Santillana's declaration stated that she "clearly saw . . . that the taillights of that Border Patrol government vehicle were not on," which "led [her] to the belief that the headlights of this vehicle were also off." She also stated that "there were no emergency lights on."

The photos in the record shows the taillights on, save for one photo that could be perceived as ambiguous. The emergency "red and blue" lights that Garcia says he turned on following the collision are on in the initial photos taken by Agent Garcia's supervisor, but off in the LPD photos.[1] However, the question at hand is whether there is a genuine dispute of material fact as to

---

[1] Obregon also claims that Agent Garcia's supervisor's photos "show no lights on the pickup were illuminated." This assertion contradicts the record. The photos that Obregon relies on to support this claim were not taken by Agent Garcia's supervisor, but instead were taken by the LPD. The photos that Agent Garcia's supervisor took show the surviving headlight, emergency lights, and taillights on.

whether Garcia's *headlights* were on when the collision occurred. Santillana merely stated her "belief that the headlights were off." Our precedent dictates that "statements in affidavits . . . be based on personal knowledge and *not based on information and belief.*" *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (emphasis added). So, we must consider only the part of Santillana's statement that concerns her personal knowledge—her statement that the government vehicle's taillights and emergency lights were off when she arrived after the accident. Even viewing this evidence in the light most favorable to Obregon, the only evidence in the record regarding Garcia's *headlights* is (i) the LPD photos that show the single surviving headlight of the truck shining and (ii) Agent Garcia's supervisor's photos, which show that same headlight on. Obregon has not presented any other evidence supporting the headlight issue as a genuine dispute for trial. Therefore, we find that Santillana's declaration is not enough to create a genuine dispute of material fact as to whether Agent Garcia had his headlights on when the collision occurred. We conclude on this point that the district court was correct in finding that Garcia did not breach his duty of care to Obregon by driving without headlights, and that the district court considered all available evidence in making this determination.

Obregon further argues that there is a genuine dispute of material fact as to Garcia's cellphone use while driving prior to the accident. This claim is based on alleged discrepancies as to the time and length of Garcia's 911-call. AT&T recorded the 911-call as two minutes and twenty-six seconds, made at 11:42 p.m. But, (i) the police report notes that the accident occurred at 11:44 p.m., and (ii) the 911-call recording was allegedly one minute and seven seconds. Obregon argues that the difference between the time of the 911-call recorded on the police report and the AT&T record (approximately two minutes) and the difference in the reported lengths of the 911-call (one minute

and nineteen seconds) show that Garcia was on his phone prior to the collision. However, Agent Garcia's phone records show that he made no other calls prior to his 911-call. We agree with the district court that the assertion that Garcia called 911 before the collision occurred "defies logic." Here, Obregon has presented only an "alleged factual dispute," as nothing in the record demonstrates the existence of a genuine dispute as to Garcia's cellphone use before the accident. The district court was correct in holding that "[n]o reasonable juror could find that [Agent Garcia] was on his cellphone prior to the wreck based on his 911-call . . . to report the collision." Likewise, we find that the district court did not make improper credibility determinations with respect to the cellphone issue.

Because Obregon fails to survive summary judgment on his prima facie case of negligence, we need not address whether he was more than fifty-percent responsible for the accident under Texas comparative-liability law. For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the government.