**In re BDT FARMS, INC., Debtor,**

**John E. FOULSTON, United States Trustee, Region 20, Appellant,**

v.

**BDT FARMS, INC., Appellee.**

**No. 93–6302.**

United States Court of Appeals,
Tenth Circuit.

April 12, 1994.

---

John E. Foulston, U.S. Trustee, Herbert M. Graves, Senior Asst. U.S. Trustee, and Mark B. Toffoli, Atty., Office of the U.S. Trustee, Oklahoma City, OK, and Martha L. Davis, General Counsel, and Paul W. Bridenhagen, Atty., Executive Office for U.S. Trustees, Washington, DC, for appellant.

B.J. Brockett, Anthony L. Jackson, and J. Mark Spaeth, Oklahoma City, OK, for appellee.

Before LOGAN and SETH, Circuit Judges, and KELLY,* District Judge.

LOGAN, Circuit Judge.

This appeal arises out of a Chapter 12 family farmer bankruptcy, 11 U.S.C. §§ 1201–31. The case presents a difficult question concerning the calculation of the standing trustee's fee under 28 U.S.C. § 586(e). The United States Trustee appeals from adverse decisions of the bankruptcy and district courts. We exercise jurisdiction under 28 U.S.C. §§ 158(d) and 1291, and reverse.[1]

---

* The Honorable Patrick F. Kelly, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

## I

BDT Farms, Inc., a family farm, filed a voluntary petition under Chapter 12 of the Bankruptcy Code in 1988. Appellant John E. Foulston was assigned as standing trustee, *see* 28 U.S.C. § 586(b), and thus became entitled to a percentage fee for a standing trustee in a Chapter 12 proceeding. *Id.* § 586(e)(1)(B) (providing Attorney General has authority to set fee). This percentage fee is "not to exceed ten percent of the payments made under the plan of [the] debtor, with respect to payments in an aggregate amount not to exceed $450,000." *Id.* at § 586(e)(1)(B)(ii)(I). The Attorney General set the percentage during part of this proceeding at ten percent. Section 586(e)(2) provides that "[The standing trustee] shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee."

In December 1992 debtor moved to close the case and the standing trustee objected.[2] The bankruptcy court sua sponte raised the issue whether the trustee's practice of assessing a fee on the total amount transferred to the trustee resulted in an effective fee of 11.1111%, in violation of the ten percent maximum. The court found it did violate the statute and the district court affirmed.

The only issue on appeal is whether the standing trustee's percentage fee under 28 U.S.C. § 586(e) is computed on the amount intended to be paid creditors through the trustee, or on the total amount transferred to the trustee. The difference is small in the appeal before us, but the resolution has implications considerably beyond the instant case. The bankruptcy and district courts that have considered the issue have reached conflicting results, and we apparently are the first circuit court to have to decide the question.

Section 586(e) is administered by the Attorney General, in consultation with the United States Trustee. *See* 28 U.S.C. § 586(e). The Attorney General, through the Executive Office for United States Trustees, has established a policy that under § 586(e)(2), a Chapter 12 standing trustee is entitled to a percentage of all monies he or she receives from the debtor, including the trustee's fee itself. *See* Handbook for Chapter 12 United States Trustees at 28–30, Appellant's App. 73–75. The bankruptcy court in this case took a contrary view, relying on *Edge v. Maikoff (In re Edge)*, 122 B.R. 219 (D.Vt. 1990), and the district court affirmed.

■ We review de novo the district court's interpretation of a federal statute. *FDIC v. Lowery*, 12 F.3d 995, 996 (10th Cir.1993). We use the following analysis when we review an agency's interpretation of a statute which it administers: We first determine whether the statute is unambiguous, and if we decide that it is ambiguous, we determine whether the agency's construction of it is permissible. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We must give effect to an unambiguous statute, *id.* and must defer to an agency's reasonable interpretation of an ambiguous statute, *id.* at 844, 104 S.Ct. at 2782–83.

■ In determining whether the statute is unambiguous, we are mindful of the need to look not only at the statute itself, but also at the larger statutory context. *See Rake v. Wade*, —— U.S. ——, ——, 113 S.Ct. 2187, 2193, 124 L.Ed.2d 424 (1993) ("[S]tatutory terms are often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [its] meaning clear.") (internal quotation omitted).

■ The bankruptcy court in this case relied on *In re Edge*, 122 B.R. 219, for its finding (in a Chapter 13 case)[3] that § 586(e)

---

**2.** The standing trustee asserted, inter alia, that debtor owed him $542.89 in trustee fees for a direct payment of an administrative claim made pursuant to the plan. *See* Appellant App. 2. The bankruptcy court denied that claim.

**3.** Because Chapter 12 was closely modeled after Chapter 13, H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess. 48 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5249, consideration of Chapter 13 cases in analyzing questions under Chapter 12 is appropriate.

is unambiguous when read in its statutory context and in light of its legislative history.[4] *See* 122 B.R. at 221. The *Edge* court examined other Chapter 13 statutes, in particular 11 U.S.C. § 1326(b)(2), which states: "Before or at the time of each payment to creditors under the plan, there shall be paid ... the percentage fee fixed for such standing trustee...." *Edge*, 122 B.R. at 221–22. The court interpreted § 1326(b)(2) as defining "payments under the plan" as payments to creditors. *Id.* The court therefore found that the trustee's fee is not a "payment[ ] received by such individual under [a Chapter 13] plan[ ]," 28 U.S.C. § 586(e)(2), and that the trustee's fee is therefore properly calculated as a percentage of only the money received by the trustee that is earmarked to be paid to creditors. *Edge*, 122 B.R. at 221. Although the *Edge* court found its definition for § 586 language in a Chapter 13 statute, 11 U.S.C. § 1326(b)(2), the bankruptcy court in this case pointed out that the parallel Chapter 12 section, 11 U.S.C. § 1226(b)(2), has identical language. *See* Order on Motions for Reconsideration, Appellant's App. at 28–29.

The trustee argues that *In re Weaver*, 118 B.R. 730 (Bankr.D.Neb.1990), rather than *In re Edge* provides a correct construction of § 586(e)(2). The *Weaver* court found, without analysis, that the "all payments received" language of § 586(e)(2) unambiguously means that the standing trustee's fee is calculated as a percentage of all of the money the debtor pays to the trustee, including the trustee's fee. 118 B.R. at 731.[5] Legal analysis to support this result is provided by an unpublished opinion, *In re Estes*, No. 91–61209, 1992 WL 512785 (Bankr.E.D.Tex. May

20, 1992). The *Estes* court expressly disagreed with *In re Edge* for two reasons: (1) § 586(e)(2) unambiguously calls for a percentage fee on "all payments received" by the trustee, not on all payments intended for creditors; and (2) if § 586(e)(2) is ambiguous, then under *Chevron*, 467 U.S. at 865, 104 S.Ct. at 2792–93, the court should defer to the agency's permissible interpretation of the statute. *Estes*, 1992 WL 512785, at *2–3.

In determining that § 586(e)(2) is unambiguous, the *Estes* court pointed out that 11 U.S.C. § 326(a), which fixes compensation for Chapter 7 and Chapter 11 trustees, "specifically limits [their] compensation to a percentage of 'moneys disbursed or turned over in the case by the trustee to the parties-in-interest.'" *Estes*, 1992 WL 512785, at *2 (quoting 11 U.S.C. § 326(a)). The court further reasoned that Congress knew how to clearly express such a limitation and its failure to do so indicates Congress did not intend such a limitation in § 586(e)(2). The bankruptcy court in the instant case rejected *Weaver* and *Estes* because neither of those decisions discussed the "under the plan" language of § 586(e)(2). Appellant's App. 28.

We have searched for guidance in the legislative history but it has not proved illuminating in this case. *See Overholt v. Farm Credit Servs. (In re Overholt)*, 125 B.R. 202, 207 (S.D.Ohio 1990) (legislative history of Chapter 12 is "scant"); *see also In re Savage*, 67 B.R. 700, 705 (D.R.I.1986) (Chapter 13 legislative history is "delphic"). There is no legislative history "reflecting Congressional consideration of ... Chapter 12 provisions in relation to the applicable provisions of Title 28 governing United States Trustee fees." *In re Finkbine*, 94 B.R. 461, 464

---

4. Although *Edge* makes general references to congressional intent in amending the statute, the case provides no cites to legislative history and, in fact, its references appear to be the court's speculation. *See* 122 B.R. at 220–21. The legislative history mentions § 586(e) but does not discuss the specific change in the language of § 586(e)(2) that is discussed by the *Edge* court. *Compare id. with* H.R.Rep. No. 99–764, 99th Cong., 2d Sess. 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5237 (discussing section 116 of H.R. 5316).

5. The *Weaver* court focused on the statutory language, stating that the legal issues were "con-

fused by [the] practical problems" of determining how much the debtor should pay the trustee to allow for both the trustee's fee and some designated amount to be paid to creditors. *Weaver*, 118 B.R. at 731. The court explained that since the trustee's fee under the statute is ten percent of all monies given by the debtor to the trustee, then the amount intended to be paid to creditors will be ninety percent of the total paid to the trustee. Thus, if the debtor wishes to pay creditors $120.00, the debtor should pay the trustee $133.33 to allow for the trustee's ten percent fee—$120.00 is ninety percent of $133.33. *Id.*

(Bankr.S.D.Ohio 1988). The legislative history that does exist can be used to support either narrow or broad constructions of Chapter 12 provisions and 28 U.S.C. § 586(e). *In re Pianowski,* 92 B.R. 225, 231 (Bankr.W.D.Mich.1988).

We have reviewed the many court decisions considering the language and legislative history of § 586(e)(2) as applied to related questions under Chapters 12 and 13, but these cases add confusion rather than clarity to the construction of § 586(e).[6] We can only conclude that § 586(e) is ambiguous. *See In re Marriott,* 161 B.R. 816, 818 (Bankr.S.D.Ill. 1993) ("divergent judicial interpretations evidence a certain ambiguity in statutory provisions relating to the payment of claims under a Chapter 12 plan"); *In re Pianowski,* 92 B.R. at 231 (provisions of Chapter 12 when read with 28 U.S.C. § 586 are somewhat ambiguous).[7] Whether Congress intended to allow the standing trustee to, in effect, collect a fee on his or her fee, or intended to limit the trustee's fee to a percentage of disbursements, is not clear from the statutory language, the larger statutory context, or the legislative history.

When Congress has not directly addressed a specific issue arising in construction of a statute, we must defer to the construction of the statute by the administering agency unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Here, the Executive Office for the U.S. Trustee has construed § 586(e) as providing that the standing trustee is entitled to collect a percentage fee of all monies he receives from the debtor, including the trustee's fees. This interpretation is permissible and under the ten percent cap of the statute. Because the statute is ambiguous, we must defer to it.

REVERSED.

---

6. One such question is whether administrative claims are "under the plan" for the purposes of § 586(e). One court has said yes. *See Greseth v. Federal Land Bank of St. Paul (In re Greseth),* 78 B.R. 936, 941 (D.Minn.1987). The *Greseth* court construed several provisions under Chapter 12 to reach the conclusion that the payment of administrative claims is an important required function of the standing trustee, and that the trustee is therefore entitled to a fee on such payments. *Id.* We take it that the *Greseth* court meant that administrative payments are "payments under the plan" within the meaning of § 586(e)(2). *See id.* at 940. Indeed, the *Greseth* court stated that "[n]either chapter 12 nor section 586(e) contemplates payments being made outside the plan." *Id.* This analysis runs contrary to the *Edge* court's view that payments "under the plan" are only those payments intended for creditors. *See Edge,* 122 B.R. at 221.

Another related question is whether a Chapter 12 debtor may make direct payments to creditors to avoid the trustee's fee under § 586(e), or whether a debtor's direct payment to a creditor is considered "under the plan" within the meaning of § 586(e) such that the debtor is merely a disbursing agent and the trustee still collects a fee. There is a split among the courts that have considered this question. *Compare Fulkrod v. Savage (In re Fulkrod),* 973 F.2d 801, 802–03 (9th Cir.1992) (holding that payments on impaired claims are "under the plan" for purposes of trustee's fee under § 586 and may not be made directly by debtor), *and In re Finkbine,* 94 B.R. at 464, 466 (finding that "under the plan" means affected by the plan, and that impaired claims must be paid under the plan), *with In re Overholt,* 125 B.R. at 211 (finding that an "under the plan/outside the plan" distinction is no longer valid; the crucial issue relevant to the trustee's fee under § 586(e) is whether the trustee "receives" payment, and that debtor may make direct payments on impaired claims to avoid the fee). Lines of cases have developed under both of these views and their analyses of the statutes vary.

7. Another court was more blunt in complaining about some of the language in § 586(e): "This labyrinthine language cries out with some degree of desperation for the catharsis of an explication." *In re Savage,* 67 B.R. at 703.