**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 18, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

In re:  DANIEL RICHARD DOLL,

    Debtor.

------------------------------------------------------

ADAM M. GOODMAN, Chapter 13
Trustee,

    Appellant,

v.

DANIEL RICHARD DOLL,

    Appellee.

------------------------------------------------------

THE NATIONAL ASSOCIATION OF
CHAPTER 13 TRUSTEES; NATIONAL
CONSUMER BANKRUPTCY RIGHTS
CENTER; NATIONAL ASSOCIATION
OF CONSUMER BANKRUPTCY
ATTORNEYS,

    Amici Curiae.

No. 22-1004

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:21-CV-00731-RBJ)**
_____

Adam M. Goodman (Jennifer K. Cruseturner, Staff Attorney for Trustee Adam M.
Goodman on the briefs), Denver, Colorado, for Appellant Goodman.

Stephen E. Berken (Sean M. Cloyes with him on the brief), Berken Cloyes, P.C., Denver, Colorado, for Appellee Doll.

Henry E. Hildebrand, III, Chapter 13 Standing Trustee, and James M. Davis, Staff Attorney, Nashville, Tennessee, filed an Amicus Curiae brief for the National Association of Chapter Thirteen Trustees, in support of Appellant.

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, California, filed an Amici Curiae brief for the National Consumer Bankruptcy Rights Center and the National Association of Consumer Bankruptcy Attorneys, in support of Appellee.

_____

Before **HOLMES**, Chief Judge, **EBEL**, and **EID**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

This bankruptcy appeal presents a question of statutory interpretation involving the fee a debtor pays to a standing trustee appointed in the debtor's Chapter 13 reorganization case. A Chapter 13 debtor makes payments to a trustee who then disburses those payments to creditors according to a confirmed reorganization plan. A Chapter 13 standing trustee is compensated through fees he collects by taking a percentage of these payments the trustee receives from the debtor. 28 U.S.C. § 586(e)(2) directs that the standing trustee "shall collect" his fee "from all payments received . . . under" Chapter 13 reorganization plans for which he serves as trustee. 11 U.S.C. § 1326(a)(1) provides that a Chapter 13 debtor "shall commence making payments" to the standing trustee within thirty days of the date the debtor files a proposed reorganization plan. Often these payments begin before the confirmation hearing on the proposed plan occurs. In light of that, 11 U.S.C. § 1326(a)(2) directs

2

the standing trustee to "retain" these pre-confirmation payments until the confirmation hearing, when the proposed reorganization plan is either confirmed or confirmation is denied.  Id. § 1326(a)(2).  "If a plan is confirmed, the trustee shall distribute any such [pre-confirmation] payment in accordance with the plan . . . ."  Id.  But "[i]f a plan is not confirmed, the trustee shall return any such [pre-confirmation] payments . . . to the debtor."  Id.  The question presented here is: If a plan is not confirmed, can the standing trustee deduct and keep his fee before returning the rest of the pre-confirmation payments to the debtor or must the trustee instead return the entire amount of pre-confirmation payments to the debtor without deducting his fee?  We conclude that, read together, 28 U.S.C. § 586(e)(2) and 11 U.S.C. § 1326(a)(2) unambiguously require the trustee to return the  pre-confirmation payments to the debtor without deducting the trustee's fee when a plan is not confirmed.  Our conclusion is bolstered by the fact that, in bankruptcies under Chapter 12 and Chapter 11 (Subchapter V), Congress expressly directed a standing trustee to deduct his fee before returning pre-confirmation payments to the debtor when a proposed plan is not confirmed, but Congress did not direct Chapter 13 standing trustees to deduct their fee before returning pre-confirmation payments to the debtor.  Having jurisdiction under 28 U.S.C. § 158(d)(1), we, therefore, AFFIRM the district court's decision denying the trustee his fee in this case.

## I. BACKGROUND

**A. Chapter 13 bankruptcies generally**

3

"Congress established two main types of consumer bankruptcy": liquidation under Chapter 7 and reorganization under Chapter 13.  In re Johnson, 634 B.R. 806, 807 (Bankr. D. Colo. 2021).  Chapter 13, at issue here,

> provides bankruptcy protection to "individual[s] with regular income" whose debts fall within statutory limits. 11 U.S.C. §§ 101(30), 109(e). Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors, see §§ 704(a)(1), 726, Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income, see §§ 1306(b), 1321, 1322(a)(1), 1328(a).

Hamilton v. Lanning, 560 U.S. 505, 508 (2010).  Chapter 13, thus,

> affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property. To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years. If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan.

Bullard v. Blue Hills Bank, 575 U.S. 496, 498 (2015).  "A bankruptcy trustee oversees the filing and execution of a Chapter 13 debtor's plan."  Hamilton, 560 U.S. at 508.  "The plan . . . shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."  11 U.S.C.A. § 1322(a)(1).

**1. Standing trustees**

There will, then, always be a trustee of some sort appointed in a Chapter 13 case.  See Hamilton, 560 U.S. at 508; see also 11 U.S.C. § 1302.  In this case, there was a standing trustee.  Congress provided for the possibility of standing trustees as part of its U.S. Trustee program.

4

Generally speaking, before 1978, bankruptcy courts conducted administrative tasks for each bankruptcy case themselves or, when necessary, bankruptcy courts appointed private trustees to conduct administrative tasks in a given case. See Siegel v. Fitzgerald, 142 S. Ct. 1770, 1775 (2022). Bankruptcy courts would oversee and approve the compensation for a private trustee's work and expenses in each case. Beginning with a pilot program in 1978, which was made permanent in 1986, Congress "transferred the administrative functions previously handled by the bankruptcy courts to newly created U.S. Trustees, housed within the Department of Justice rather than the Administrative Office of the U. S. Courts." Id. at 1776. As part of that transfer, Congress directed the Attorney General to appoint a U.S. Trustee for each judicial district (except those in Alabama and North Carolina), and to supervise those U.S. Trustees. See 28 U.S.C. §§ 581, 586(c); see also Siegel, 142 S. Ct. at 1776. Compensation for the U.S. Trustee program is based on "user fees" paid by debtors. Siegel, 142 S. Ct. at 1776. Reflecting Congress' transfer of administrative duties from bankruptcy courts to the U.S. Trustee Program, which is part of the Department of Justice, the statutes addressing the U.S. Trustee Program are found in Title 28 of the U.S. Code, rather than in Title 11, which contains the Bankruptcy Code.

Congress authorized U.S. Trustees to appoint, when necessary, and then to supervise "standing trustees" in several types of bankruptcy cases, including those filed under Chapter 13:

5

> If the number of cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 commenced in a particular region so warrants, the United States trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustees to serve in cases under such chapter.

28 U.S.C. § 586(b) (emphasis added). Section 586(b), then, addresses standing trustees for Chapter 13 cases, as well as Chapter 12 cases involving reorganization by family farmers and fishermen and cases under Chapter 11 (Subchapter V) involving small business reorganization. See generally 11 U.S.C. §§ 1183(a), 1202(a), 1302(a) (addressing appointment of standing trustees in these types of cases).

As we have said, there will always be a trustee of some sort appointed in a Chapter 13 case. See Hamilton, 560 U.S. at 508; see also 11 U.S.C. § 1302. If the U.S. Trustee for a district does not invoke 28 U.S.C. § 586(b) to appoint one or more standing trustees, the U.S. Trustee can designate an assistant U.S. Trustee to act as trustee in Chapter 13 cases, see 28 U.S.C. § 586(b), or appoint a "disinterested" private trustee in a given case, see 11 U.S.C. § 1302(a). This case involves a standing trustee appointed by the U.S. Trustee for the District of Colorado.

The trustee performs a number of duties in a Chapter 13 case, both before and after a plan's confirmation. Id. § 1302(b)-(d); see McCallister v. Harmon (In re Harmon), BAP No. ID-20-1168-LSG, 2021 WL 3087744, at *7 (BAP 9th Cir. July 20, 2021) (unpublished) (describing standing trustee's pre-confirmation duties). Those duties include facilitating the debtor's development of a proposed

6

reorganization plan and receiving payments from the debtor and disbursing those payments to creditors according to a confirmed reorganization plan.

A standing trustee is compensated through fees paid by debtors. Those fees are based on a percentage of the payments the trustee receives from the debtor for disbursement to creditors under the confirmed reorganization plan. See 28 U.S.C. § 586(e). The Attorney General sets the standing trustee's maximum annual compensation, id. § 586(e)(1)(A), and, after considering the standing trustee's annual compensation and his projected yearly expenses, the Attorney General establishes a percentage of the payments that the trustee receives from the debtor that the trustee will take as his fee. Id. § 586(e)(1)(B). For Chapter 13 bankruptcies, Congress has capped that "percentage fee" at 10%, id. § 586(e)(1)(B)(i), and that 10% is the percentage fee at issue here. The standing trustee turns over fees collected from all debtors that exceed the amount necessary to compensate the standing trustee and cover his or her expenses to the district's U.S. Trustee to be deposited in the U.S. Trustee System Fund. Id. § 586(e)(2). See generally Dunivent v. Schollett (In re Schollett), 980 F.2d 639, 641–44 (10th Cir. 1992) (discussing this statutory scheme).

Summarizing this system of standing trustees, the Rhode Island district court, taking a 30,000-foot view, explained that the standing trustees Congress established

> represented an effort to transfer ministerial responsibilities incident to Chapter 13 cases from a judicial arena to an administrative one, that is, from the bankruptcy courts to the Attorney General. The method of compensating standing trustees must realistically be viewed as an important part of this endeavor. Rather than enmire the courts in the

laborious business of setting fees in individual cases—many of them small in terms of assets, and some of them bone-dry—the Code and Title 28 authorized the Attorney General to fix the allowances of standing trustees on a yearly basis. An overall sense of balance thus became achievable. The "no asset" or "meagre assets" cases can be handled professionally, because the system is not dependent upon each individual matter to generate its own fees. To the contrary, the Attorney General considers the volume of cases committed to the trustee, reviews the trustee's program-related expenses for the prior year, and projects the amount of funds that will be handled during the upcoming year. This overall forecast—rather than the vicissitudes of each individual filing—becomes the cynosure of the fee calculation. And, there is some built-in prophylaxis: lest the remuneration for standing trustees prove excessive, the statute sets a ceiling on both annual and per case compensation. See 28 U.S.C. §§ 586(e)(1)(A), (e)(2).

In re Savage, 67 B.R. 700, 706–07 (D. R.I. 1986).  "Congress has . . . plainly chosen to spread the costs of trusteeship pro rata over all Chapter 13 debtors within the court's jurisdiction."  Id. at 707.  In light of this structure,

[t]he percentage fixed by the Attorney General to determine allowable compensation in no way purports to constitute a precise prognostication of what the value of a trustee's services will be in every Chapter 13 case. It is certainly true that in some instances, . . . the allowance collected under the statute will exceed the fair value of the work performed. But, in as many (or more) instances—say, where the case had an inordinate degree of complexity or is one in which no monies whatever are available for distribution—the statutory percentage will provide remuneration insufficient to reimburse the trustee fully (or, in the worst cases, at all) for his time and expenses.

Id. at 708.  Thus,

[a] standing trustee undertakes the obligation to serve as trustee in all cases filed within the district. She cannot know in advance which cases will actually arise or the degree of effort they will require. Her agreement to accept the percentage fee in exchange for a commitment to undertake all of the district's trusteeship duties is thus based on a calculation of the average effort required compared with the average payments involved. The cases in which she receives greater compensation will presumably be counterbalanced by those for which her fees will be minimal.

In re Schollett, 980 F.2d at 645.

## 2. Chapter 13 procedures generally

Chapter 13 cases are designed to move fairly quickly. After a debtor files his bankruptcy petition, a trustee is appointed and the debtor has fourteen days to file a proposed plan to adjust his debts. See 11 U.S.C. §§ 1302(a), 1321–22; Bankr. R. 3015(b). "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier." 11 U.S.C. § 1326(a)(1). That means that the debtor must begin making payments even if there has not yet been a confirmation hearing on the proposed plan. Such pre-confirmation payments are payable to the trustee "in the amount . . . proposed by the plan." Id. § 1326(a)(1)(A).[1] In requiring these pre-confirmation payments, Congress reasoned that "when the payments do not begin promptly, the debtor becomes accustomed to living on money that will not be available once the plan becomes operational," and that "the period between the filing of a plan and confirmation provides a good test of whether the debtor will be able to

---

[1] A debtor can also make some payments directly to creditors instead of to the trustee. See 11 U.S.C. § 1326(a)(1)(B) (payments scheduled in a lease of personal property), (C) (payments that provide adequate protection to creditor holding an allowed claim secured by personal property to extent claim is attributable to purchase of such property). But see Bankr. D. Colo. R. 2083-1(a) (requiring debtor to make pre-confirmation adequate-protection payments to trustee instead of secured creditor unless otherwise ordered). The payments the debtor makes directly to creditors must also begin within thirty days of the debtor filing his proposed plan or the order of relief, whichever is earlier. See 11 U.S.C. § 1326(a)(1).

9

carry out the plan, or whether some modification is necessary." In re Acevedo, 497 B.R. 112, 121 n. 22 (Bankr. D. N.M. 2013) (quoting S. Rep. No. 98-65, at 15–16 (1983)).  The pre-confirmation payments at issue in this case had to include the trustee's fee.  Bankr. D. Colo. R. 2083-1(a).

As for what becomes of those pre-confirmation payments that 11 U.S.C. § 1326(a)(1)(A) requires the debtor to make to the trustee, 11 U.S.C. § 1326(a)(2) provides that

> [a] payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).[2]

(Emphasis, footnote added.)

A debtor whose proposed plan is denied can usually file a new proposed plan and seek to have it confirmed.  See Bullard, 575 U.S. at 498.  A Chapter 13 case can, instead, be converted to another type of bankruptcy case or can be dismissed completely, at the debtor's request or the request of the trustee or an interested party. 11 U.S.C. § 1307.

**B.  This case**

---

[2] A standing trustee's fee is not a claim covered by 11 U.S.C. § 503(b).  See Skehen v. Miranda (In re Miranda), 285 B.R. 344, 2001 WL 1538003, at *2 (BAP 10th Cir. 2001) (unpublished).  This issue is not contested.

In 2017, Debtor Daniel Doll lived in Rifle, Colorado, and was the sole proprietor of Doll Ventures LLC, a business that repaired forklifts. Doll, through counsel, initiated this Chapter 13 case in November 2017. Doll proposed four reorganization plans over the next year and a half. Each proposed plan called for Doll to make monthly payments to the standing trustee for the benefit of his creditors. The bankruptcy court declined to confirm any of those plans, based on objections from the standing trustee, Doll's former spouse, and the former spouse's attorney.[3] After the fourth denial, Doll declined to file another amended plan and the bankruptcy court, therefore, dismissed his case. By that time, Doll had made pre-confirmation payments to the standing trustee totaling $29,900.[4] From those pre-confirmation payments, the standing trustee paid $19,800 to Doll's bankruptcy attorney for attorney's fees[5]; paid, with Doll's consent, over $7,500 to the Colorado

---

[3] "If an unsecured creditor or the bankruptcy trustee objects to confirmation, [11 U.S.C.] § 1325(b)(1) requires the debtor either to pay unsecured creditors in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan." Hamilton, 560 U.S. at 508–09. Generally speaking, "'disposable income' means current monthly income received by the debtor," minus "amounts reasonably necessary" for debtor's "maintenance or support," certain charitable contributions and, if the debtor is engaged in business, the business's necessary expenses. 11 U.S.C. § 1325(b)(2); see Hamilton, 560 U.S. at 510.

[4] No one in this case appears to dispute that the trustee can hold all the pre-confirmation payments while the debtor continues to propose amended plans.

[5] See generally In re Oliver, 222 B.R. 272, 274 (Bankr. E.D. Va. 1998) (recognizing that "the debtor's attorney's fees and expenses are administrative expenses which are properly payable by the Trustee prior to the return of the remaining funds to the debtor pursuant to section 1326(a)(2)").

11

Department of Revenue to cover some of Doll's taxes; and retained $2,596.70 as the trustee's fee. Doll then filed a "Motion to Disgorge Trustee's Fees" by which Doll sought to have the standing trustee return to Doll the $2,596.70 fee the trustee had kept, arguing the trustee was not entitled to any fee because no plan had been confirmed before Doll's case was dismissed.

The bankruptcy court denied the "Motion to Disgorge." Doll appealed. The district court[6] reversed, agreeing with Doll that the standing trustee was not entitled to keep any fee because no plan had been confirmed and thus such payments should be returned to Doll. The Trustee challenges the district court's decision in this appeal.[7]

## II.  DISCUSSION

We review de novo questions of statutory interpretation. See William F. Sandoval Irrevocable Tr. v. Taylor (In re Taylor), 899 F.3d 1126, 1129 (10th Cir. 2018). In doing so, we must give a statute its "plain," Lamie v. U.S. Tr., 540 U.S.

---

[6] Debtor Doll appealed the bankruptcy court's decision to the bankruptcy appellate panel ("BAP") for the Tenth Circuit. But the Trustee exercised his option under 28 U.S.C. § 158(c)(1)(B), to have the district court hear the appeal instead.

[7] Bankruptcy and district courts are divided on the question of whether a Chapter 13 standing trustee can keep his fee if no plan is confirmed. Compare, e.g., Nardello v. Balboa (In re Nardello), 514 B.R. 105, 109 (D. N.J. 2014) (holding Chapter 13 standing trustee is entitled to her fee even though no plan was confirmed), with, e.g., In re Acevedo, 497 B.R. at 114 (Bankr. D. N.M. 2013) (holding 11 U.S.C. § 1326(a)(2) requires Chapter 13 standing trustee to return to debtor payments made under proposed plan without deducting trustee's fee when case is dismissed before plan is confirmed).

526, 534 (2004), or "natural" reading, United States v. Ron Pair Enters., Inc., 489

U.S. 235, 241 (1989).  Only if a statute is ambiguous—that is, when "its text, literally

read, admits of two plausible interpretations," Graham Cty. Soil & Water

Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 420 n.2 (2005)—will a court

consider legislative history or, when appropriate, defer to an agency's interpretation

of that statute.  See Estrada-Cardona v. Garland, 44 F.4th 1275, 1283 (10th Cir.

2022); Nelson v. United States, 40 F.4th 1105, 1117 (10th Cir. 2022).  Whether a

statute is ambiguous "'is determined [not only] by reference to the language itself,

[but as well by] the specific context in which that language is used, and the broader

context of the statute as a whole.'"  Yates v. United States, 574 U.S. 528, 537 (2015)

(quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (alterations added in

Yates)).

**A.  28 U.S.C. § 586(e)(2) and 11 U.S.C. § 1326(a), read together, unambiguously require a Chapter 13 standing trustee to return  pre-confirmation payments to the debtor without deducting the trustee's fee when no plan is confirmed**

The question presented here is resolved unambiguously by reading together

both 28 U.S.C. § 586 and 11 U.S.C. § 1326.  We start with 28 U.S.C. § 586(e)(2),

which provides that a standing trustee "shall collect [the trustee's] percentage fee

from all payments received by such individual under plans in the cases under

subchapter V of chapter 11 or chapter 12 or 13 of title 11 for which such individual

serves as standing trustee."  Relevant here, § 586(e)(2) only addresses the source of

funds that may be accessed to pay standing trustee fees.  It requires a Chapter 13

13

standing trustee to "collect" his fee from "all payments received . . . under plans" for which he acts as trustee.

It is 11 U.S.C. § 1326(a) that addresses those Chapter 13 payments and what happens to that money, including, importantly, what happens to such payments if a Chapter 13 plan is not confirmed. Most relevant here, § 1326(a) states:

> (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount--
>
> (A) proposed by the plan to the trustee;
>
> . . . .
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

(Emphasis added.)

As an initial matter, there are several situations addressed in § 1326(a)(2)'s final sentence that are not implicated here. First, § 1326(a)(2) requires the trustee to "deduct[] any unpaid claim allowed under [11 U.S.C.] § 503(b)" before returning pre-confirmation payments to the debtor when no plan has been confirmed. Both parties agree that the standing trustee's fee is not an "unpaid claim allowed under section 503(b)," which deals instead with certain specified administrative expenses. See Skehen v. Miranda (In re Miranda), 285 B.R. 344, 2001 WL 1538003, at *2 (BAP 10th Cir. 2001) (unpublished) ("The standing Chapter 13 trustee's percentage fee

14

is not an administrative claim within the meaning of § 503(b)." (citing In re Ward, 132 B.R. 417, 419 (Bankr. D. Neb. 1991))).

Second, § 1326(a)(2) also clearly specifies that when a plan is not confirmed the trustee is to return to the debtor "payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3)." The "paragraph (3)" to which this language refers is 11 U.S.C. § 1326(a)(3), which provides: "Subject to section 363," which addresses the use, sale, or lease of the bankruptcy estate's property, "the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan." Because there was no hearing in this case to modify, increase, or reduce pre-confirmation payments, § 1326(a)(3) is not implicated here. The Trustee does not argue to the contrary.[8]

Our focus here is on § 1326(a)(2)'s straightforward language stating that "[i]f a plan is not confirmed, the trustee shall return any such [pre-confirmation] payments . . . to the debtor." Read together with 28 U.S.C. § 586(e), § 1326(a)(2) unambiguously answers the question presented by this appeal. While § 586(e)(2) directs a Chapter 13 standing trustee to collect his fee from all Chapter 13 plan

---

[8] Rather than reading this language from 11 U.S.C. § 1326(a)(2)—requiring the trustee to return to the debtor "payments not previously paid and not yet due and owing creditors pursuant to" § 1326(a)(3)—to refer in its entirety to § 1326(a)(3), Amicus National Association of Chapter 13 Trustees reads this language to make two separate statements: "the trustee shall return any such [pre-confirmation] payments [1] not previously paid and [2] not yet due and owing to creditors pursuant to paragraph (3) to the debtor" (numbers added). That interpretation does not change our conclusion that this part of the statute is not implicated in this case. We disagree that the standing trustee's fee was already paid at the time the trustee received the pre-confirmation payment. We explain why later in this opinion, in Section II.B.1.

payments that the trustee receives from the debtor, § 1326(a)(2) requires the trustee to return pre-confirmation payments to the debtor when no plan is confirmed. We read that to mean that the standing trustee must return all of the pre-confirmation payments he receives, without first deducting his fee. There is no indication in this statutory language that the trustee should first deduct his fees before returning the pre-confirmation payments to the debtor when no plan is confirmed.

Our conclusion is bolstered by how Congress addressed the same fee question in Chapter 12 and Chapter 11 (Subchapter V) bankruptcies. See, e.g., State of Utah v. Babbitt, 53 F.3d 1145, 1148 (10th Cir. 1995) ("In determining the meaning of a statute, we look at not only the statute itself but also at the larger statutory context.").

Like Chapter 13 cases, 28 U.S.C. § 586(e)(2) directs standing trustees in Chapter 12 and Chapter 11 (Subchapter V) cases to "collect" their "fee from all payments received" by the trustee "under plans" for which they serve as trustee. Like Chapter 13 debtors, Chapter 12 and Chapter 11 (Subchapter V) debtors sometimes make pre-confirmation payments to the standing trustee. See 11 U.S.C. §§ 1194(a), 1226(a). And, like Chapter 13, when a proposed plan under Chapter 12 and Chapter 11 (Subchapter V) is not confirmed, the standing trustee must return pre-confirmation payments to the debtor. See §§ 1194(a), 1226(a). But, in contrast to Chapter 13, in Chapter 12 and Chapter 11 (Subchapter V) cases Congress provided explicitly that the standing trustee should first deduct his or her fee before returning pre-confirmation payments to the debtor. 11 U.S.C. § 1194(a), for example, which addresses Chapter 11 (Subchapter V) cases, specifically provides:

16

Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor <u>after deducting</u>--

> (1) any unpaid claim allowed under section 503(b) of this title;

> (2) any payment made for the purpose of providing adequate protection of an interest in property due to the holder's secured claim; and

> (3) <u>any fee owing to the trustee.</u>

(Emphasis added.)  Similarly, in Chapter 12 cases, 11 U.S.C. § 1226(a) states:

Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, <u>after deducting</u>--

> (1) any unpaid claim allowed under section 503(b) of this title; and

> (2) <u>if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee</u>.

(Emphasis added.)

While Congress, then, in §§ 1194(a)(3) and 1226(a)(2), specifically directed the standing trustees appointed in Chapter 12 and Chapter 11 (Subchapter V) cases to deduct their fees before returning any remaining pre-confirmation payments to the debtor when a plan is not confirmed, Congress did not so provide in § 1326(a)(2) addressing Chapter 13 cases.  From that, we are persuaded that Congress intended that Chapter 13 standing trustees not deduct their fees before returning

17

pre-confirmation payments to the debtor when a plan is not confirmed. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (internal quotation marks omitted). Said another way, had Congress intended Chapter 13 trustees to deduct their fees before returning pre-confirmation payments to debtors when a plan is not confirmed, Congress "presumably would have" stated that "expressly as it did" in §§ 1194(a)(3) and 1226(a)(2). Id.

The Trustee in this case, focusing primarily on Chapter 12, seeks to distinguish that chapter from Chapter 13. Among other differences, the Trustee points out that Chapter 12 bankruptcies are less common than Chapter 13 cases; while pre-confirmation payments to a trustee are mandatory under Chapter 13, they are only voluntary under Chapter 12 unless the bankruptcy court orders them; Chapter 12 pre-confirmation payments, thus, occur less frequently than in Chapter 13 cases; the timeline for Chapter 13 bankruptcies is quicker than it is for Chapter 12 bankruptcies; and § 1326(a) addresses "payments" the trustee receives in Chapter 13 cases, while § 1226(a) addresses "payments and funds" received by the trustee in Chapter 12 cases. We do not believe these distinctions between Chapter 12 and Chapter 13 bankruptcies are material to the question before us. It remains clear that when Congress wanted the standing trustee to deduct his fee before returning pre-confirmation payments to the debtor when a plan is not confirmed, Congress

18

expressly said so as in Chapter 12 and Chapter 11 (Subchapter V). But Congress did not so provide in Chapter 13 cases.

The Trustee contends that this difference in drafting can be explained by the fact that Congress enacted § 1326 earlier than it enacted § 1226. But Congress enacted § 1326(a) in 1984, only two years before it enacted § 1226(a) in 1986. In re Harmon, 2021 WL 3087744, at *20–21 (Lafferty, J., dissenting). "Chapter 12 was closely modeled after Chapter 13." Foulston v. BDT Farms, Inc. (In re BDT Farms), 21 F.3d 1019, 1021 n.3 (10th Cir. 1994). Furthermore, although Congress also amended § 1326(b) in 1986, the same year it enacted Chapter 12, Congress did not at that time amend § 1326(a) and, in particular, did not add language directing the Chapter 13 trustee to deduct his fee before returning pre-confirmation payments to the debtor when no plan is confirmed. See In re Harmon, 2021 WL 3087744, at *21 (Lafferty, J., dissenting); cf. Lindh v. Murphy, 521 U.S. 320, 330 (1997) (noting that "negative implications raised by disparate provisions are strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted").

Congress reiterated the language in § 1226(a) expressly directing the standing trustee to deduct his fees before returning pre-confirmation payments to the debtor thirty-three years later, when in 2019 Congress used that same language in enacting § 1194(a)(3). See id. (Lafferty, J., dissenting).

Congress's differing treatment of standing trustee fees in these various types of bankruptcy reorganization cases is compelling. Congress's treatment of trustee

19

fees in Chapter 12 and Chapter 11 (Subchapter V) cases establishes that Congress knew how to direct the standing trustee to deduct his fees before returning any pre-confirmation payments to the debtor when a proposed plan is not confirmed. Yet Congress did not direct a Chapter 13 standing trustee to deduct his fees before returning pre-confirmation payments to a Chapter 13 debtor.

If we were to conclude instead, as the Trustee urges, that Congress just stated more clearly in §§ 1194(a)(3) and 1226(a) what it had already implicitly provided in § 1326(a)—that the standing trustee should keep his fee before returning pre-confirmation payments to the debtor when a plan is not confirmed—that would render the express language directing the standing trustee to deduct his fee in §§ 1194(a)(3) and 1226(a) surplusage. Although the Supreme Court has indicated that its "preference for avoiding surplusage constructions is not absolute," Lamie, 540 U.S. at 536, "courts must give effect, if possible, to every clause and word of a statute," Liu v. S.E.C., 140 S. Ct. 1936, 1948 (2020) (quoting Parker Drilling Mgmt. Servs., Ltd. v. Newton, 587 U.S. —, 139 S. Ct. 1881, 1890 (2019)). Giving effect to §§ 1194(a)(3) and 1226(a)(2)'s express direction that standing trustees in Chapter 12 and Chapter 11 (Subchapter V) cases should deduct their fees from pre-confirmation payments before returning them to the debtor when no plan is confirmed suggests that Congress did not intend Chapter 13 standing trustees to do the same where such language is omitted.

While the Trustee asserts several policy arguments for why requiring him to return his fee to a Chapter 13 debtor when no plan is confirmed is a bad idea,

20

Congress has unambiguously already made that policy decision for Chapter 13 debtors.  See Fla. Dep't of Rev. v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 52 (2008) (stating "it is not for us to substitute our view of . . . policy for the legislation which has been passed by Congress" (quoting Baltimore Cty. v. Hechinger Liquidated Tr. (In re Hechinger Inv. Co. of Del., Inc.), 335 F.3d 243, 256 (3d Cir. 2003)).  There are good reasons for Congress' choice, see In re Harmon, 2021 WL 3087744, at *21 (Lafferty, J., dissenting); Amicus Br. (Nat'l Consumer Bankr. Rights Ctr. & Nat'l Ass'n. of Consumer Attorneys) at 1–2, but we need not consider them because the statute's language is clear.

We, therefore, hold that 11 U.S.C. § 1326(a), read together with 28 U.S.C. § 586(e)(2), and considered in light of the different language in 11 U.S.C. §§ 1194(a)(3) and 1226(a)(2), unambiguously require the standing Chapter 13 trustee to return pre-confirmation payments to the debtor without the trustee first deducting his fee, when a proposed Chapter 13 reorganization plan is not confirmed.[9]

B.  The Trustee's other arguments lack merit

The Trustee makes several additional arguments which, as we briefly explain, we find unpersuasive.

---

[9] In light of our holding, we need not address Debtor Doll's alternative argument for affirmance— that § 586(e)(2)'s language providing that the standing trustee "shall collect" his fee "from all payments received . . . under" Chapter 13 "plans" refers only to confirmed plans, and not to proposed but as yet unconfirmed plans.  Doll forfeited that argument by not raising it until this appeal and not arguing for plain-error review.  See Rumsey Land Co. v. Res. Land Holdings, LLC (In re Rumsey Land Co.), 944 F.3d 1259, 1271–72 (10th Cir. 2019).

**1.  The Trustee argues 28 U.S.C. § 586(e)(2), read by itself, permits him to keep his fee when no Chapter 13 plan is confirmed**

The Trustee contends that 28 U.S.C. § 586(e)(2)'s language clearly permits him to deduct his fees before returning pre-confirmation payments to the debtor when a plan is not confirmed.  The Trustee specifically points to 28 U.S.C. § 586(e)(2)'s language stating that the Chapter 13 standing trustee "shall collect" his "fee from all payments received by [the trustee] under [Chapter 13] plans."  Citing Black's Law Dictionary, among other authorities, the Trustee argues that "collect" means to obtain payment for his fee, and that means final and irrevocable payment.

This argument fails, however, because it  conflates the initial "collection" of funds from which subsequent payments may be made, and the subsequent act by the trustee of the disbursement of those funds to various creditors or claimants.  The Trustee seeks to support his position by reading the word "irrevocable" into the statute as an adjective defining "collect."  See Lamie, 540 U.S. at 538 (declining to "read an absent word into the statute," distinguishing between filling in a statutory "'gap left by Congress' silence,'" which might be acceptable, and rewriting the statute, which is not acceptable (quoting Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625 (1978))).

Moreover, "collect" in 28 U.S.C. § 586(e)(2) cannot mean, as the Trustee urges, that the act of "collection" of funds irrevocably constitutes a payment to the Trustee of his fees.  As said previously, Congress separately directed standing trustees in Chapter 12 and Chapter 11 (Subchapter V) cases to deduct their fees

before returning pre-confirmation payments to debtors when no plan is confirmed but used no such language in Chapter 13. See 11 U.S.C. §§ 1194(a)(3), 1226(a)(2).

**2. The Trustee argues 11 U.S.C. § 1326(b)(2) permits him to keep his fee when no Chapter 13 plan is confirmed**

Next, the Trustee cites to 11 U.S.C. § 1326(b)(2), which is another part of the statute addressing payments in Chapter 13 cases. Section 1326(b)(2) provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid . . . if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28."

The Trustee relies on this language to argue that the trustee was already paid his fee at the moment the trustee received the debtor's pre-confirmation payments. When § 1326(b) is read as a whole, however, it is clear that this statutory provision does not address pre-confirmation payments but instead addresses only payments made after a plan has been confirmed.

> Section 1326(b) requires the standing Chapter 13 trustee to pay the trustee's percentage fee "before or at the time of each payment to creditors under the plan." But the trustee may pay creditors only under a confirmed plan. See 11 U.S.C. § 1326(a)(2) (requiring the trustee to retain the payments until confirmation or denial of confirmation, and then distribute the payments in accordance with the plan "[i]f a plan is confirmed"). Because the trustee will never pay creditors if no plan is confirmed, and § 1326(b) provides for payment of trustee fees before or at the time the trustee pays creditors, it follows that, if confirmation never happens, § 1326(b) does not contemplate payment of the trustee's percentage fee. See [In re] Rivera, 268 B.R. [292,] 294 [(Bankr. D. N.M.)] (observing that § 1326(b) "seems to assume a prior confirmation.").

In re Acevedo, 497 B.R. at 120–21.  Our conclusion that § 1326(b) only addresses payments made under a confirmed plan is bolstered by the fact that Congress included this language in the Bankruptcy Code before Congress required any pre-confirmation payments under Chapter 13.  See id. at 121.  The Trustee's argument based on § 1326(b), then, is unavailing.

**3. The Trustee relies, alternatively, on the Chapter 13 Trustee Handbook**

The Trustee also argues, alternatively, that § 586(e)(2) could be ambiguous, requiring this court to defer to the Chapter 13 Trustee Handbook's interpretation of § 586(e)(2)'s language.  The Handbook, promulgated by the Executive Office for the U.S. Trustee (and quoted below), indicates that the Trustee might get to keep his fee if no plan is confirmed.  The Trustee's argument for deference to the Chapter 13 Trustee Handbook fails because, as we have explained earlier, 28 U.S.C. § 586(e)(2), when read with 11 U.S.C. § 1326(a)(2), unambiguously requires a Chapter 13 standing trustee to return pre-confirmation payments to the debtor without deducting the trustee's fee, when a proposed plan is not confirmed.  Thus, we need not rely on the extrinsic evidence of the Handbook to determine the meaning of this statutory language.

In resisting that conclusion, the Trustee argues 28 U.S.C. § 586(e)(2) is ambiguous, relying on our decision in In re BDT Farms, 21 F.3d 1019.  But that case which involved a Chapter 12 family farmer bankruptcy, presented a different question than the issue presented in our case.  The issue in In re BDT Farms was how the standing trustee's fees should be calculated, see id. at 1021, not whether the

24

trustee gets a fee if no plan is confirmed.  However, the fact that In re BDT Farms deemed § 586(e)(2) to be ambiguous as to the question presented in that case of how to calculate a trustee's fee does not mean that the statute is ambiguous in all circumstances.  See generally Yates, 574 U.S. at 537 (stating that whether a statute is ambiguous "'is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'" (quoting Robinson, 519 U.S. at 341)).  Here, as we have already explained, § 586(e)(2), when read together with 11 U.S.C. § 1326(a), unambiguously answers the question presented here, which was a different question than that presented in In re BDT Farms.

In light of that conclusion, we need not consider the Trustee's arguments for affording Chevron deference to the Chapter 13 Trustee Handbook.  But we note that there are additional problems with such an argument.  In re BDT Farms afforded the Chapter 12 Trustee Handbook Chevron deference in 1994.  The Supreme Court has since held that an agency's "interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference."  Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000).  Instead, such documents are "'entitled to respect'" only to the extent they "have the 'power to persuade.'"  Id. (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

In this case, the Trustee asserts that the Chapter 13 Trustee Handbook should "still be given a measure of deference." (Aplt. Br. 48.) But the Handbook is not strongly persuasive on the issue before us. It provides, in relevant part:

> The standing trustee is authorized to collect the percentage fee upon receipt of the payment. The trustee must transfer the percentage fee to the operating expense account at least monthly. If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that has been collected upon receipt <u>if there is controlling law in the district requiring such reversal</u> or if (after consultation with the United States Trustee) <u>the standing trustee determines that there are other grounds for concern in the district.</u>

(Aplt. App. 162 (emphasis added).) As drafted, then, it appears that the Handbook's default position is that, when a plan is not confirmed, the trustee should keep his fee unless a court says he cannot or unless there are "other grounds for concern in the district." It is not apparent what "other grounds for concern in the district" might mean. This is hardly the exercise of agency expertise in interpreting an ambiguous statute or filling a regulatory gap left by Congress to which a court usually defers. In any event, we need not decide here whether the Handbook is entitled to any sort of deference because the statutory language at issue here is unambiguous.[10]

### III. CONCLUSION

Read together, 28 U.S.C. § 586(e)(2) and 11 U.S.C. § 1326(a) unambiguously provide that a Chapter 13 standing trustee must return pre-confirmation payments to

---

[10] Doll raises another concern, suggesting that deferring to the Chapter 13 Trustee Handbook, which provides that court decisions contrary to the Handbook would control in districts where such decisions exist, might violate the Constitution's requirement that bankruptcy laws be uniform nationally. We need not address that question here.

the debtor without deducting the trustee's fee, when a proposed Chapter 13 plan is not confirmed. Our conclusion is bolstered by comparing other sections of the Bankruptcy Code that expressly permit Chapter 12 and Chapter 11 (Subchapter V) standing trustees to deduct their fee before returning pre-confirmation payments to debtors when no plan is confirmed. Congress did not make the same provision for Chapter 13 standing trustees. We, therefore, AFFIRM the district court's decision not allowing the Chapter 13 trustee in this case to keep his fee.